DECISION
{¶ 1} Relator, Gary C. Schaengold, filed this original action requesting that this court issue a writ of mandamus ordering respondent, Ohio Public Employees Retirement System Board ("board"), to find that he is and has been a "public employee" as defined in R.C. 145.01(A)(2), by virtue of his acting as a magistrate for the Dayton Municipal Court from March 1986 to the present.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court grant the requested writ. (Attached as Appendix A.) The board and respondents, City of Dayton ("city") and the Dayton Municipal Court ("court"), filed objections to the magistrate's decision. None of the respondents objected to the magistrate's findings of fact, and we adopt them as our own. Nevertheless, we summarize briefly those facts most pertinent to our discussion.
 {¶ 3} Relator is an attorney and has his own private law practice. Relator is one of nine attorneys willing to serve as a magistrate in the court on an as-needed basis. If the court has a need for a magistrate and relator is unable to serve, relator may decline the assignment. When serving as a magistrate, relator hears whatever cases are on the docket for that day and uses the court's facilities to do so. Relator receives $100 per half-day and $200 per full-day of service at the court.
 {¶ 4} The city has always considered relator to be an "independent contractor." The city has not maintained relator on the city payroll; rather, he receives compensation through a general purchase order. For tax purposes, his income is reported on a 1099 form, not a W-2 form. Relator's income from his service as a magistrate varied over the years and ranged from $115.38 in 1986 to $8,300 in 1999.
 {¶ 5} Relator also serves as a magistrate for the Vandalia Municipal Court and the Fairborn Municipal Court. These courts consider relator to be a "public employee" under Ohio law while acting as their magistrate, and they have remitted contributions to the Ohio Public Employees Retirement System ("PERS") on his behalf.
 {¶ 6} In 1999, relator asked PERS to determine whether his service as a magistrate for the court rendered him eligible for membership in PERS. By letter dated February 3, 2003, PERS informed the city that relator and the eight other similarly situated attorneys on the court's as-needed list were public employees. Accordingly, PERS found that the city was liable for the purchase of the unreported service and informed the city that the bill for such service would include the employee and employer contributions, plus interest, for the period beginning in March 1986.
 {¶ 7} The city presumably appealed PERS's initial finding, as a PERS hearing examiner heard the matter. By report and recommendation dated April 5, 2005, the hearing examiner determined that relator is a public employee while serving as a magistrate for the court.
 {¶ 8} At an August 18, 2005 meeting, the board rejected the hearing examiner's conclusions of law. The board's August 29, 2005 notice to the parties stated the following:
The Board modified the findings of fact and rejected the conclusions of law from the April 5, 2005, Report and Recommendation and found that [relator] was not and is not a public employee while performing service as a Magistrate of the Dayton Municipal Court for the time period commencing 1986 through present, and therefore is not eligible for OPERS coverage for this time period. The Board determined that the factors weighed more heavily in concluding that the service is more of that of an independent contractor rather than a public employee, including the facts that [relator] is not required to report to the court on a daily basis, he has the option of passing on assignments if he has scheduling conflicts, and represents individual clients in the Dayton Municipal Court on days when he is not on the bench.
 {¶ 9} Thereafter, relator filed this action, which asks that this court issue a writ of mandamus ordering the board to find that he is a public employee while serving as a magistrate. As noted, this court's magistrate recommended that we grant the requested writ. In coming to this recommendation, the magistrate looked to the applicable statutory and regulatory definitions and then to the factual findings in the initial PERS decision in 2003, and the hearing examiner's report and recommendation in 2005. The magistrate then stated:
Ordinarily, this magistrate would decline to suggest that an abuse of discretion exists when a board or a commission has rendered a decision; however, where, upon review of the totality of the evidence, the magistrate finds that the evidence is overwhelmingly in favor of one party over the other, it is difficult to conclude that the governing body has not abused its discretion. * * *
 {¶ 10} In their objections, respondents assert that the magistrate improperly substituted her judgment for that of the board. We agree.
 {¶ 11} A clear legal right to a writ of mandamus exists when a board is found to have abused its discretion by entering an order that is not supported by some evidence. Kinsey v. Bd. ofTrustees of Police Firemen's Disability Pension Fund of Ohio
(1990), 49 Ohio St.3d 224, 226; State ex rel. Peyton v. Pub.Emp. Retirement Sys. of Ohio (Nov. 16, 2000), Franklin App. No. 00AP-78. The term "abuse of discretion" connotes more than an error of law; it exists where the decision is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Thus, the appropriate question here is whether the board abused its discretion by issuing a decision that is not supported by some evidence.
 {¶ 12} In Peyton, a relator requested a writ of mandamus in the trial court and sought review of the board's decision that her late husband was not a public employee entitled to retirement benefits. The trial court granted summary judgment in favor of the board, and this court affirmed. Although this court recognized that the evidence was "somewhat disputed," the board was still entitled to summary judgment because its decision was supported by some evidence. Id. Specifically, this court found that that individual did not work regular hours, did not receive fringe benefits, was not paid an hourly wage, and used his own equipment. Because this evidence supported the board's decision, the board had not abused its discretion, and the relator had no clear legal right to the writ.
 {¶ 13} Here, we acknowledge that there is evidence on both sides of the question whether relator is a public employee. We find, however, that some evidence supports the board's decision that relator is not a public employee. As the board noted in its August 29, 2005 letter, relator does not maintain a regular work schedule, he may decline assignments, and he represents clients before the court when he is not acting as a magistrate. In addition, the city does not maintain relator on its payroll, the city pays relator via purchase order, and relator's income is reported through a 1099 form, not a W-2 form. Because some evidence supports the board's decision, the board did not abuse its discretion, and relator has no clear legal right to a writ of mandamus.
 {¶ 14} For these reasons, we sustain the sole objection of the board and the first objection of the city and the court. The second objection of the city and the court is moot. Accordingly, the requested writ of mandamus is denied.
Objections sustained and objection moot, writ of mandamusdenied.
Brown and McCormac, JJ., concur.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Gary C. Schaengold, :
Relator, :
v. : No. 05AP-1002
Ohio Public Employees Retirement : (REGULAR CALENDAR) System, City of Dayton, Ohio and Dayton Municipal Court, :
Respondents. :
 MAGISTRATE'S DECISION Rendered on April 20, 2006 Gary C. Schaengold, pro se.
Jim Petro, Attorney General, and Anthony D. Siciliano, for respondent Ohio Public Employees Retirement System.
Patrick J. Bonfield, Director of Law, and John C. Musto,
for respondents City of Dayton and Dayton Municipal Court.
 IN MANDAMUS {¶ 15} Relator, Gary C. Schaengold, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Ohio Public Employees Retirement System Board ("board") to find that he is and has been a "public employee," as such is defined in R.C. 145.01(A)(2), when relator has acted as a magistrate for the Dayton Municipal Court from March 1986 to the present.
Findings of Fact:
 {¶ 16} 1. Relator is an attorney licensed to practice law in the state of Ohio.
 {¶ 17} 2. Relator maintains his own private law practice and has also acted as a magistrate for the Dayton Municipal Court since 1986. Relator was and is one of nine attorneys licensed to practice law in the state of Ohio on a list of attorneys willing to serve as a magistrate in the Dayton Municipal Court on an as needed basis. When called, the attorneys are permitted to turn down the appointment if they are unavailable and the court then contacts another attorney on the list. On days when relator or one of the other attorneys serve as a magistrate, they are paid $100 for one-half day and $200 for a full day of service to the court.
 {¶ 18} 3. The record shows that, on days when he served as a magistrate, relator was required to hear whatever cases were on the docket for that day just as the regular magistrate for whom he was filing in would have done. Relator made use of the court's facilities, including the courtroom and secretarial staff. The record also shows that, as with other magistrate's serving in the state of Ohio, relator was required to receive certain continuing legal education requirements through the Ohio Judicial College.
 {¶ 19} 4. At all times, the city of Dayton has considered relator to be an "independent contractor." Relator was not maintained on the Dayton Municipal Court's payroll, he was compensated with a general purchase order, and his payments were reported on an IRS form 1099 and not a W-2 form. The city of Dayton has always considered relator to be a "temporary fill-in" magistrate which the city has continuously distinguished from a "part-time" magistrate or a "full-time" magistrate.
 {¶ 20} 5. It is undisputed that relator did not spend inordinate amounts of time serving as a magistrate with the court. For example, the 1099s contained within the record demonstrate that relator was paid the following amounts per year: 1986-$115.38; 1988-$865.60; 1989-$210; 1990-$2,110.32; 1991-$3,593.32; 1992-$2,281.88; 1993-$2,616; 1994-$1,635; 1995-$4,041.25; 1996-$5,330.30; 1997-$7,632.20; 1998-$4,800; and 1999-$8,300.
 {¶ 21} 6. At some point in time, relator also began serving as a magistrate for both the Vandalia Municipal and the Fairborn Municipal Courts. Both of those courts consider relator to be a "public employee" and remit contributions to Ohio Public Employees Retirement System ("PERS") on his behalf. In 1999, relator sought a determination from PERS regarding whether his service as a magistrate by appointment with the Dayton Municipal Court rendered him eligible for membership in PERS. By letter dated February 3, 2003, Robert Sayre, Compliance Officer with PERS, informed the city of Dayton that relator, and the eight other attorneys similarly situated and serving as magistrates with the court, were all public employees. That letter specifically provided:
According to the information provided, the City supplies office space and equipment, the City provides and pays assistants, the employee is paid per day (salary) from the City's general fund, the City has the authority to request which Magistrate works, the Magistrate follows the employer's procedures, and the City has supervisory power thought [sic] the Judge. The Magistrate is appointed by Court Entry. There is no written contract relative to the terms of service or delineating the relationship between the City and Magistrate.
Based upon the above, we have determined that Mr. Schaengold is a public employee as defined in Section 145.01 (A) of the Ohio Revised Code. As such, he is subject to contributing PERS membership beginning March 17, 1986. We request that the City add Mr. Schaengold to the City's current Report of Retirement Contributions and begin withholding PERS retirement contributions immediately.
The City is liable for the purchase of this unreported service per Section 145.483 of the Ohio Revised Code. Please certify this service on the enclosed Supplemental History Record, form AA. After we have received the completed form, our Back Payments department will inform the City of the cost to purchase this credit. The bill will consist of the employee and employer contributions, plus interest, for the period beginning March 17, 1986.
Your letter of October 3, 2002 lists eight other Magistrates. We ask that you follow the same procedures for these other employees.
 {¶ 22} 7. The matter was later submitted to hearing examiner Christopher B. McNeil. Evidence was submitted and the matter was heard before the hearing examiner. By report and recommendation dated April 5, 2005, the hearing examiner for PERS determined that relator was a public employee and not an independent contractor. The hearing examiner found the following evidence to be particularly relevant in determining the issue:
* * * The record establishes that Magistrate Schaengold served the City of Dayton and its Municipal Court at the direction of the Court's Administrative Judge. His duties were the same as incumbent Magistrates for that court, with the same amount of supervision and direction as is attributed to every magistrate. * * *
* * * [O]nce Magistrate Schaengold accepts an appointment, he is not free to perform where or when he chose; to the contrary, his day is fully scheduled and he is obliged to attend to each of the matters on his docket, following the rules prescribed for all Magistrates of that court.
* * *
* * * The Dayton Municipal Court, acting through its Administrative Judge, secures the Claimant's services by daily appointments in which the Administrative Judge appoints the Claimant to serve in place of a sitting, full-time Magistrate. The Administrative Judge has appointed the Claimant in this manner since 1986. The Administrative Judge controls and supervises the manner of the Claimant's work, in that the Administrative Judge decides when to appoint the claimant, and when the Claimant is appointed the Judge decides which Magistrate he will replace, and decides where the Claimant will hear cases, when he will hear cases, and which cases he will hear. The Dayton Municipal Court provides all of the Claimant's support staff, including any bailiff, court reporter, and secretarial staff. The Court also provides the room the Claimant uses, the supplies used, and all utilities necessary to perform services as a Magistrate. The Claimant is not required to provide his own supplies and equipment, nor is he required to pay his assistants in the performance of his services as a Magistrate for the Dayton Municipal Court.
 {¶ 23} The hearing officer rejected the city's argument that, since it had always considered relator to be an "independent contractor," relator was an independent contractor. The hearing officer determined that there was insufficient evidence presented to establish that the city had correctly determined the issue.
 {¶ 24} 8. After the hearing examiner reached his decision, the city appealed and ultimately, the board issued a letter dated August 29, 2005 which rejected the conclusions of the hearing officer as follows:
The Board modified the findings of fact and rejected the conclusions of law from the April 5, 2005, Report and Recommendation and found that Gary Schaengold was not and is not a public employee while performing service as a Magistrate of the Dayton Municipal Court for the time period commencing 1986 through present, and therefore is not eligible for OPERS coverage for this time period. The Board determined that the factors weighed more heavily in concluding that the service is more of that of an independent contractor rather than a public employee, including the facts that Mr. Schaengold is not required to report to the court on a daily basis, he has the option of passing on assignments if he has scheduling conflicts, and represents individual clients in the Dayton Municipal Court on days when he is not on the bench.
 {¶ 25} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 26} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law.State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 27} Pursuant to R.C. 145.01(A)(4), the PERS board has the authority and discretion to determine whether an individual is a "public employee" and the board's decision is final subject to review in mandamus.
 {¶ 28} R.C. 145.01 provides, in part:
(A) "Public employee" means:
(1) Any person holding an office, not elective, under the state or any county, township, municipal corporation * * * or administrative body as the same are, or have been, created by action of the general assembly or by the legislative authority of any of the units of local government named in division (A)(1) of this section, or employed and paid in whole or in part by the state or any of the authorities named in division (A)(1) of this section[.] * * *
 {¶ 29} R.C. 145.012 provides, in part:
(A) "Public employee," as defined in division (A) of section145.01 of the Revised Code, does not include any person:
(1) Who is employed by a private, temporary-help service and performs services under the direction of a public employer or is employed on a contractual basis as an independent contractor under a personal service contract with a public employer[.]
 {¶ 30} Supplementing R.C. 145.012 is Ohio Adm. Code145-1-42(A) which provides, in part:
(2) "Independent contractor" means an individual who:
(a) Is a party of a bilateral agreement which may be a written document, ordinance, or resolution that defines the compensation, rights, obligations, benefits and responsibilities of both parties;
(b) Is paid a fee, retainer or other payment by contractual arrangement for particular services;
(c) Is not eligible for workers' compensation or unemployment compensation;
(d) May not be eligible for employee fringe benefits such as vacation or sick leave;
(e) Does not appear on a public employer's payroll;
(f) Is required to provide his own supplies and equipment, and provide and pay his assistants or replacements if necessary;
(g) Is not controlled or supervised by personnel of the public employer as to the manner of work; and
(h) Should receive an Internal Revenue Service form 1099 for income tax reporting purposes.
 {¶ 31} The Supreme Court of Ohio has stated that pension provisions like R.C. 145.01(A) must be liberally construed in favor of public employees and their dependents who the statutes were designed to protect. See, e.g., State ex rel. Solomon v.Police Firemen's Disability Pension Fund Bd. of Trustees
(1995), 72 Ohio St.3d 62; State ex rel. Local Union 377 v.Youngstown (1977), 50 Ohio St.3d 200; and State ex rel. Malloryv. Pub. Emp. Retirement Bd. (1998), 82 Ohio St.3d 235.
 {¶ 32} Respondents assert that they determined that relator would be an independent contractor and not a public employee and that they met the requirements of Ohio Adm. Code 145-1-42(A)(2).
 {¶ 33} A clear legal right to a writ of mandamus exists when the board is found to have abused its discretion by entering an order that is not supported by some evidence. Kinsey v. Bd. ofTrustees of Police Firemen's Disability Pension Fund of Ohio
(1990), 49 Ohio St.3d 224. The term abuse of discretion connotes more than just an error of law; it exists where the decision is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 34} In the present case, respondents argue that the board's decision that relator's service is more that of an independent contractor rather than a public employee is supported by "some evidence" in the record and, as such, argues that this court cannot find an abuse of discretion. Respondents point to the following evidence: relator does not report to the court on a daily basis; relator can turn down an assignment if he has a scheduling conflict; and relator represents individual clients before the court on days when he is not on the bench. Respondents also note that, although there is no contract between relator and the city, the city has chosen to provide relator with an IRS form-1099 instead of an IRS W-2 form for income tax reporting purposes. Furthermore, respondents argue that relator does not appear on the public payroll and that he was not eligible for workers' compensation, unemployment compensation, or other fringe benefits. Further, respondents note that relator provided his own robe and was not supervised by court personnel, but, rather, was governed by the Ohio Rules of Civil Procedure and the Municipal Court Rules.
 {¶ 35} The issue here appears to be whether respondents properly determined that relator was an independent contractor in spite of the fact that the person whose job duties relator was performing was and always has been considered a public employee. Can respondents make relator an "independent contractor" simply by designating him as such?
 {¶ 36} It is undisputed that due deference should be paid to a reasonable construction by the board of its own rules. SeeMcAuliffe v. Bd. of Pub. Emp. Retirement Sys. of Ohio (1994),93 Ohio App.3d 353. However, after considering the evidence in the entire record, this magistrate concludes that the board could not have properly and reasonably concluded that relator was an independent contractor and not a public employee when it comes to PERS benefits. By letter dated February 3, 2003, Robert Sayre determined that relator was a public employee. He based this decision on the following facts: the city supplies office space and equipment; the city provides and pays assistants; relator is paid a per-day salary from the city's general fund; the city has the authority to request which magistrate works; the magistrate follows the employer's procedures; the city has supervisory power through the judge; the magistrate is appointed by court entry; and there is no written contract relative to the service or delineating the relationship between the city and relator. None of those facts are in dispute.
 {¶ 37} Furthermore, in the hearing examiner's April 5, 2005 report, he also concluded that relator was a public employee and not an independent contractor. The hearing officer found the following facts to be important: the administrative judge controls and supervises the manner of relator's work by deciding when to appoint him; when he is appointed, the administrative judge determines which magistrate he will replace, decides where he will hear cases, when he will hear cases, and which cases he will hear; the Dayton Municipal Court provides all of relator's support staff, including any bailiff, court reporter, and secretarial staff; the Dayton Municipal Court also provides the room relator uses, the supplies used, and all utilities necessary for relator to perform services as a magistrate; relator is not required to provide his own supplies and equipment, nor is relator required to pay his assistants in the performance of his services as a magistrate; when relator serves as a magistrate, he assumes all of the duties that the city magistrate would assume for that day; there is no written contract between relator and the city; the magistrate for whom relator sits on any given day is a public employee and is a member of PERS and, as stated previously, relator is stepping into that magistrate's shoes on any given day and is performing the work that magistrate would have performed but for the fact that that city magistrate is not present. The hearing officer found that relator presented sufficient evidence that he was a "public employee" and that the city had failed to come forward with enough evidence to establish that he was not.
 {¶ 38} Ordinarily, this magistrate would decline to suggest that an abuse of discretion exists when a board or a commission has rendered a decision; however, where, upon review of the totality of the evidence, the magistrate finds that the evidence is overwhelmingly in favor of one party over the other, it is difficult to conclude that the governing body has not abused its discretion. It is not enough for the city to simply say that they have always treated relator like an independent contractor; therefore, relator must be an independent contractor. In the present case, the record reflects that, when he sits on the bench, relator is a magistrate. Magistrates are public employees. Simply because relator is filling in for another magistrate who, for whatever reason, is not able to sit on a given day, does not change the fact that relator is assuming all of his/her duties, all of his/her responsibilities, and is stepping into his/her shoes as a "public employee." In making this recommendation to the court, the magistrate is not doing so lightly, but with utmost seriousness. Upon review of the record, this magistrate can come to but one conclusion, and that conclusion is that relator has demonstrated that the board abused its discretion in concluding that he was an independent contractor and not a public employee and thereby denying him the right to participate in the PERS for, and only for, the time he actually served as a magistrate. As such, this magistrate would grant a writ of mandamus ordering the PERS board to vacate its order denying relator the right to participate in the retirement system and ordering the board to permit him to do so.