[Cite as *State ex rel. Nese v. State Teachers Retirement Bd. of Ohio,* 136 Ohio St.3d 103, 2013-Ohio-1777.]

THE STATE EX REL. NESE ET AL., APPELLANTS, *v.* STATE TEACHERS
RETIREMENT BOARD OF OHIO, APPELLEE; JEFFERSON COUNTY EDUCATIONAL
SERVICE CENTER GOVERNING BOARD, APPELLANT.

[Cite as *State ex rel. Nese v. State Teachers Retirement Bd. of Ohio,*
136 Ohio St.3d 103, 2013-Ohio-1777.]

*State Teachers Retirement System—Eligibility for membership—Virtual learning academy—R.C. 3307.01(B)—"Teacher," defined—Instructors providing services to students of virtual learning academy are not "employed in the public schools" but rather are independent contractors—Membership in retirement system not available to instructors who have no ongoing contract with county, set their own hours, do not receive benefits, do not use county facilities, and are paid on a per-pupil or per-course basis.*

(No. 2012-0251—Submitted January 9, 2013—Decided May 2, 2013.)

APPEAL from the Court of Appeals for Franklin County,

No. 09AP-1161, 2011-Ohio-6764.

_____

**O'CONNOR, C.J.**

{¶ 1} This is an appeal from a judgment denying the request of relators-appellants John Nese, Donald Williams, and Catherine Miles ("the instructors") for writs of mandamus to compel respondent-appellee State Teachers Retirement Board of Ohio ("STRS") to accept employer and employee contributions to its retirement fund and to compel respondent-appellant Jefferson County Educational Service Center Governing Board ("Jefferson County ESC") to make employer contributions to the retirement system on their behalf.

{¶ 2} The salient question in this appeal is not whether the instructors were "teachers" as that term is commonly understood.[1] Rather, the question before us is whether the STRS had some evidence to support its conclusion that the instructors were independent contractors, and not employees, of the Jefferson County ESC and therefore were not "teachers" within the meaning of R.C. 3307.01(B)(5).

{¶ 3} Because the instructors fail to establish that the STRS abused its discretion in determining that they were not "teachers" within the meaning of R.C. 3307.01(B)(5), we must affirm the decision of the court of appeals, which similarly held that the instructors had not established that the STRS abused its discretion.

## RELEVANT BACKGROUND

{¶ 4} An "education service center" ("ESC") is a statutory creation. As part of an educational regional service system, its purpose is to provide support to state and local educational initiatives and to improve school effectiveness and student achievement. R.C. 3312.01(A). An ESC provides services to school districts and community schools by contract and by statute. R.C. 3312.01(A) and (C); Hastings, Manoloff, Sharb, Sheeran & Jaffe, *Baldwin's Ohio School Law*, Section 4.5, 44-45 (2011-2012 Ed.).

{¶ 5} Jefferson County ESC works with administrators, teachers, and students in seven local school districts. In 2001, school superintendents in some of those schools were concerned over the depletion of resources in their districts caused by the loss of students recruited to "community schools," also known as "charter schools," which were authorized by the General Assembly's enactment of R.C. Chapter 3314 in 1997. 147 Ohio Laws, Part I, 909, 1187. *See State ex*

---

1. Nese and Williams are teachers in local school districts hired by Jefferson County to provide instruction to students in the Virtual Learning Academy ("VLA"). Miles is a retired teacher hired by Jefferson County to provide instruction to the students in the VLA.

*rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 1, 6. The superintendents believed that it was necessary to research "online curriculum options" that could be used to compete with charter schools, and Jefferson County ESC began looking at a "virtual learning academy" that was being used by another district.

{¶ 6} A "virtual learning academy" or "VLA" is an "internet-based educational delivery system designed for K-12, providing alternative educational options for credit deficiencies, alternative programs, home schooling, home bound instruction, and 2002 summer school programs." A VLA is not a school; it is an "educational option," like "distance learning," which involves "systematic instruction in which the instructor and/or student participate by mail or electronic media." Ohio Adm.Code 3301-35-01(B)(10)(a) (including "distance learning" as an "educational option").

{¶ 7} After researching the market, Jefferson County ESC determined that the best on-line curriculum was available through a California vendor, Learning Springs. Jefferson County ESC passed a resolution to partner with Learning Springs and then marketed its own VLA to local school districts and, eventually, districts around the state. But as the program proved more successful in enrolling students, concerns arose over the curriculum's failure to fully align with Ohio's state academic-content standards. In 2003, Jefferson County ESC hired teachers to rewrite the curriculum so that it would fully align with state standards.

{¶ 8} Although we are not aware of any reported case in the state or federal courts that addresses the specific question with which we are confronted, we are aware that "cyber schools" and curriculum options like the VLA are increasing in America. A number of states include virtual learning as a form of public education. *See generally* Browning, *Will Residency Be Relevant to Public Education in the Twenty-First Century?,* 8 Pierce L.Rev. 297, 338-339 (2010).

Indeed, cyber schools are an increasingly popular, and rapidly growing, addition to the education community. There were only 60 "virtual" or "cyber" charter schools in America in 2003, but by 2009, more than 100,000 students were enrolled in 195 virtual schools in 26 states. Brady, Umpstead & Eckles, *Unchartered Territory: The Current Legal Landscape of Public Cyber Charter Schools,* 2010 B.Y.U.Educ. & L.Rev. 191.

{¶ 9} Ohio is at the forefront of this development. "In 2003, Ohio had only six cyber charter schools. Since 2003, Ohio has officially granted charters for the opening of thirty-nine additional cyber charter schools." *Id*. at 196, fn. 19. As of April 2008, the VLA served 22,000 students in 180 school districts in Ohio.[2]

{¶ 10} The instructors in this case were hired to instruct students in the VLA. Each instructor can serve hundreds of students in a given year.

{¶ 11} If a school district decides to use the VLA as part of its own curriculum, that district decides whether to use its own faculty or the VLA staff. If the school district decides to use VLA staff, Jefferson County "matches" the students to one of the VLA instructors. Jefferson County receives a participation fee of $175 per student for its role and "passes through" the pay VLA instructors receive, which is $105 per student per semester, or $210 per student for a full (two-semester) academic year.

{¶ 12} In order to obtain that pay, VLA instructors submit a stipend form to Jefferson County ESC when a student completes a course or the student's license expires. If the school district withdraws a student from a VLA course,

---

2. Notably, however, Jefferson County ESC has marketed its VLA curriculum to other states and to foreign countries. Through those successful efforts, the VLA has a presence in all 50 states and in over 14 countries.

Jefferson County ESC pays the instructor on a prorated basis for the number of units of the course the student completes.

{¶ 13} As VLA instructors, Nese, Williams, and Miles did not have contracts with Jefferson County. Rather, they signed a form provided by Jefferson County that stated that they agreed "to be on board to take on VLA students." As VLA instructors, they did not receive health insurance or other fringe benefits from Jefferson County ESC. However, most VLA instructors are full-time teachers working in classrooms. Nese and Williams served as teachers in local school districts and thus received health insurance and other benefits through their traditional teaching jobs. And Miles retired as a teacher at the end of the 2008-2009 school year and likely received those benefits through her retirement plan.

{¶ 14} Nese, Williams, and Miles were entitled to a great deal of latitude in their day-to-day work. For example, VLA instructors were authorized to create their own midterm and final examinations or to use on-line lessons as the examinations.

{¶ 15} They were also free, as were other VLA instructors, to choose when and where they did their work. Jefferson County did not set specific times at which they were required to instruct or deadlines by which the work had to be completed. And although Jefferson County offered a place to work for teachers and students who do not have access to a computer, the VLA instructors were not required to teach there. In fact, most of the VLA instructors worked at home or at a public library and often did so after typical school hours.

{¶ 16} Jefferson County ESC initially considered its VLA instructors to be independent contractors rather than employees. Consequently, it did not deduct contributions to pay into the retirement system. Eventually, however, Jefferson County ESC decided to treat its VLA instructors as employees and withheld contributions accordingly. Thus, for example, in 2004, Williams

received a 1099 form from Jefferson County for his work instructing in the VLA, but for 2005 through 2009, he received W-2 forms. Other instructors also received 1099 forms initially and subsequently received W-2s.

{¶ 17} In November 2008, the STRS determined that the VLA instructors were independent contractors instead of employees. It refunded all contributions made by Jefferson County ESC on the VLA instructors' behalf. Thereafter, Jefferson County ESC adopted a resolution specifying duties for its VLA faculty, including the general duties of "logging into the system on a daily basis to grade student's work, answering student's questions, providing feedback to students, providing structure to students, and outlining expectations to students." And Nese, Williams, and Miles were given performance evaluations after the STRS's decision that they were independent contractors.

{¶ 18} In December 2009, Nese, Williams, and Miles filed an action in the Tenth District Court of Appeals challenging the STRS's decision. In their amended complaint, Nese, Williams, and Miles sought writs of mandamus to compel Jefferson County ESC to make the requisite employer contributions to the retirement system for their VLA instruction and to compel the STRS to accept employer and employee contributions based on their work for the VLA and to include their VLA compensation in calculating their final average salary for retirement purposes. In so doing, the VLA instructors were seeking inclusion of their compensation as VLA instructors into the calculation of their final annual salary for retirement purposes. The amounts are significant: the instructors allege that the compensation from working in the VLA ranged from hundreds to tens of thousands of dollars and reached as high as $66,324 for one instructor.

{¶ 19} On December 29, 2011, the court of appeals denied the writ. The court held that there was some evidence to support the STRS's finding that the VLA instructors were independent contractors. Nese, Williams, Miles, and Jefferson County ESC appealed to this court. We now affirm.

ANALYSIS

*Mandamus and the Applicable Standard of Review*

{¶ 20} The instructors seek extraordinary relief, mandamus, to compel the STRS to accept retirement-system contributions for their work while instructing for Jefferson County ESC. To be entitled to the requested relief, Nese, Williams, and Miles must establish a clear legal right to be recognized as members of the retirement system for their VLA work, a corresponding clear legal duty on the part of the STRS to treat them as retirement-system members and to accept contributions for their VLA work, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Nation Bldg. Technical Academy v. Ohio Dept. of Edn.*, 123 Ohio St.3d 35, 2009-Ohio-4084, 913 N.E.2d 977, ¶ 11.

{¶ 21} Notably, the instructors must establish their entitlement to the writ by clear and convincing evidence. *State ex rel. Wasserman v. Fremont*, 131 Ohio St.3d 52, 2012-Ohio-27, 960 N.E.2d 449, ¶ 4. In other words, the instructors must present evidence that

> is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and [that] will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*State ex rel. Husted v. Brunner,* 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 18, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 22} We begin our analysis with the propriety of mandamus relief in this case.

**{¶ 23}** "The General Assembly established the State Teachers Retirement System to pay retirement allowances and other benefits to public school teachers, and the State Teachers Retirement Board administers and manages the retirement system." *State ex rel. Morgan v. State Teachers Retirement Bd. of Ohio*, 121 Ohio St.3d 324, 2009-Ohio-591, 904 N.E.2d 506, ¶ 19, citing R.C. 3307.03 and 3307.04. The determination of whether any person is a teacher, and thus a member of the retirement system, is solely within the province of the retirement board. *See* R.C. 3307.01(B) ("In all cases of doubt, the state teachers retirement board shall determine whether any person is a teacher, and its decision shall be final").

**{¶ 24}** Because the retirement board's final decision whether a person is a teacher and thus a member of the retirement system is not appealable, Nese, Williams, and Miles lack an adequate remedy in the ordinary course of law. Thus, mandamus is available to the instructors if they show that the STRS abused its discretion in making its determination. *See State ex rel. Hulls v. State Teachers Retirement Bd. of Ohio*, 113 Ohio St.3d 438, 2007-Ohio-2337, 866 N.E.2d 483, ¶ 27 (applying abuse-of-discretion standard to the retirement board's determination concerning disability-retirement benefits); *State ex rel. Schaengold v. Ohio Pub. Emps. Retirement Sys.*, 114 Ohio St.3d 147, 2007-Ohio-3760, 870 N.E.2d 719, ¶ 8 (applying this standard to a public-employees retirement board's denial of service credit).

**{¶ 25}** "An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable." *State ex rel. Stiles v. School Emps. Retirement Sys.*, 102 Ohio St.3d 156, 2004-Ohio-2140, 807 N.E.2d 353, ¶ 13. Thus, " '[a]s long as there is sufficient evidence to support [a] retirement-system board's decisions, we will not disturb them.' " *State ex rel. Marchiano v. School Emps. Retirement Sys.*, 121 Ohio St.3d 139, 2009-Ohio-307, 902 N.E.2d 953, ¶ 21, quoting *State ex rel.*

*Grein v. Ohio State Hwy. Patrol Retirement Sys.*, 116 Ohio St.3d 344, 2007-Ohio-6667, 879 N.E.2d 195, ¶ 9.

**{¶ 26}** The quantum of evidence necessary to support the retirement-system board's decision is not large. As we stated in *Schaengold*,

[A] "clear legal right to a writ of mandamus exists when the board is found to have abused its discretion by entering an order that is not supported by some evidence." [*State ex rel. Schaengold v. Ohio Pub. Emps. Retirement Sys.,* 10th Dist. No. 05AP-1002,] 2006-Ohio-5093, 2006 WL 2789921, ¶ 33. See, e.g., *Kinsey v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund of Ohio* (1990), 49 Ohio St.3d 224, 225, 551 N.E.2d 989; see, also, *State ex rel. Peyton v. Schumacher* (Nov. 16, 2000), Franklin App. No. 00AP-78, 2000 WL 1715901, *1, and *Gerchak v. Pub. Emps. Retirement Bd.* (Sept. 15, 1998), Franklin App. No. 98AP-325, 1998 WL 635313, *2, applying the same standard to uphold Public Employees Retirement Board determinations that claimants were independent contractors rather than public employees.

114 Ohio St.3d 147, 2007-Ohio-3760, 870 N.E.2d 719, ¶ 19.

**{¶ 27}** A fortiori, if there is some evidence to support the board's determination, mandamus will not lie. *State ex rel. Foley v. Vulcan Mfg. Co.*, 84 Ohio St.3d 59, 60, 701 N.E.2d 993 (1998) (because there was "some evidence on which the [Industrial Commission] could rely" in denying benefits, the court "cannot disturb the commission's decision"), citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 508 N.E.2d 936 (1987).

**{¶ 28}** Deference is always due in an abuse-of-discretion case. But it is particularly important when, as here, we are presented with conflicting evidence

on whether a worker is an employee or an independent contractor. In cases in which a worker presents some evidence that he is an employee rather than an independent contractor, the question becomes one of fact that should be decided by the fact-finder. *Indus. Comm. v. Laird*, 126 Ohio St. 617, 186 N.E. 718 (1933), paragraph three of the syllabus. *See also Bostic v. Connor*, 37 Ohio St.3d 144, 145-146, 524 N.E.2d 881 (1988) (the question whether a worker is an employee or independent contractor becomes a jury question when the worker presents some evidence that he is an employee). We are mindful that the STRS is the finder of fact in this matter, as well as an adjudicator highly knowledgeable about Ohio's teachers, their work, and their pensions.

{¶ 29} Having set forth the applicable standards, we proceed with our analysis of the dispositive issue in this appeal: whether some evidence supported the STRS's decision that Nese, Williams, and Miles were independent contractors of Jefferson County ESC rather than employees of Jefferson County ESC.

### R.C. 3307.01(B): Definition of "Teacher"

{¶ 30} Under Ohio law, public-school teachers and their employers must make contributions to the retirement fund. R.C. 3307.26 and 3307.28. As relevant to this case, R.C. 3307.01(B)[3] defines "teacher" for purposes of retirement-system membership as

> (1) Any person paid from public funds and employed in the public schools of the state under any type of contract described in section 3311.77 or 3319.08 of the Revised Code in a position for which the person is required to have a license issued pursuant to sections 3319.22 to 3319.31 of the Revised Code;
>
> * * *

_____

3. Effective January 7, 2013, the language that was previously in subsection (B)(4) of R.C. 3307.01 now appears in subsection (B)(5). 2012 Sub.S.B. No. 342.

(5) Any other teacher or faculty member employed in any school, college, university, institution, or other agency wholly controlled and managed, and supported in whole or in part, by the state or any political subdivision thereof, including Central state university, Cleveland state university, and the university of Toledo.

{¶ 31} In construing statutory provisions, including R.C. 3307.01(B), our paramount concern is the legislative intent. *State Farm Mut. Auto. Ins. Co. v. Grace*, 123 Ohio St.3d 471, 2009-Ohio-5934, 918 N.E.2d 135, ¶ 25. "An axiom of statutory construction is that '[w]ords * * * that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.' " *Hoffman v. State Med. Bd. of Ohio*, 113 Ohio St.3d 376, 2007-Ohio-2201, 865 N.E.2d 1259, ¶ 26, quoting R.C. 1.42.

{¶ 32} R.C. 3307.01(B)(1) and (5) require that individuals must be employees to be "teachers"—and thus covered by the retirement system's pension plan. But the STRS determined that Nese, Williams, and Miles were not "teachers," because they were independent contractors rather than employees when they worked as VLA instructors for Jefferson County ESC. We thus turn to the legal tests for distinguishing an employee from an independent contractor.

*Common Law: Distinguishing Employees from Independent Contractors*

{¶ 33} "The chief test in determining whether one is an employee or an independent contractor is the right to control the manner or means of performing the work." *Bobik v. Indus. Comm.*, 146 Ohio St. 187, 64 N.E.2d 829 (1946), paragraph one of the syllabus. *See also Foran v. Fisher Foods, Inc.*, 17 Ohio St.3d 193, 194, 478 N.E.2d 998 (1985) (holding that "one who exercises day-to-day control over the employee will be considered as the employer"). "If such right is in the employer, the relationship is that of employer and employee; but if the manner or means of performing the work is left to one responsible to the

employer for the result alone, an independent contractor relationship is created." *Pusey v. Bator*, 94 Ohio St.3d 275, 279, 762 N.E.2d 968 (2002), citing *Bobik* at paragraph two of the syllabus.

**{¶ 34}** In so holding, however, we have recognized that as a practical matter, every contract for work reserves to the employer a certain degree of control to enable him to ensure that the contract is performed according to specifications. *Gillum v. Indus. Comm.,* 141 Ohio St. 373, 382, 48 N.E.2d 234 (1943). Thus, we have distinguished on the continuum of control whether a worker is an employee or an independent contractor:

"The control of the work reserved in the employer which effects a master-servant relationship is control of the means and manner of performance of the work, as well as of the result; an independent contractor relationship exists where the person doing the work is subject to the will of the employer only as to the result, but not as to the means or manner of accomplishment. Thus, a person employed to perform certain work is not necessarily a mere servant because the contract provides that the work shall be subject to the approval or satisfaction of the employer. Such a provision is not an assumption by the employer of the right to control the person employed as to the details or method of doing the work, but is only a provision that the employer may see that the contract is carried out according to the plans." See also, 21 Ohio Jurisprudence, 626, Section 4; *Miller v. Metropolitan Life Ins. Co.*, 134 Ohio St. 289, 291, 16 N.E.2d 447 [(1938)]; *Industrial Commission v. McAdow*, 126 Ohio St. 198, 184 N.E. 759 [(1933)]; *Klar v. Erie R. Co.*, 118 Ohio St. 612, 162 N.E. 793 [(1928)]; *Hughes v. Cincinnati & S.*

12

> *Railway Co.*, 39 Ohio St. 461 [(1883)]; *Pickens & Plummer v. Diecker & Bros.*, [21 Ohio St. 212 (1871)].

*Gillum* at 382-383, quoting 27 American Jurisprudence, Section 7, at 488.

{¶ 35} Our case law makes clear that in determining who has the right to control the work, we must look at the individual facts of a case.

> The factors to be considered include, but are certainly not limited to, such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes travelled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts.

*Bostic v. Connor*, 37 Ohio St.3d at 146, 524 N.E.2d 881.

{¶ 36} We now view the evidence in the record through the lens of the foregoing law on mandamus and employment.

### *The Record*

{¶ 37} The record demonstrates that the instructors did not have an employment contract with Jefferson County ESC. They did not receive health insurance or other fringe benefits.

{¶ 38} They set their own work hours and could create their own examinations. They did not use Jefferson County ESC's facilities to perform their work. They were not required to instruct a specific number of students or courses.

{¶ 39} The instructors were paid "stipends," which were flat fees per student. Two of them initially received 1099 forms instead of W-2 forms for tax purposes because Jefferson County ESC originally considered them to be independent contractors rather than employees.

**{¶ 40}** We have relied on comparable factors in upholding a public employee retirement board's determination that persons are independent contractors rather than public employees entitled to retirement-system membership and benefits. *See, e.g., Schaengold*, 114 Ohio St.3d 147, 2007-Ohio-3760, 870 N.E.2d 719, ¶ 20-21 (factors included that attorney serving as a temporary magistrate pursuant to a bilateral contract was paid a flat fee, was not eligible for employee fringe benefits, was not controlled or supervised in conducting hearings or in issuing decisions, and received a form 1099 for tax purposes). Similarly, the courts of appeals have found, on similar facts, that a person was an independent contractor rather than an employee. *See, e.g., State ex rel. Curtin v. Ohio Pub. Emps. Retirement Sys.*, 10th Dist. No. 09AP-801, 2011-Ohio-2536, ¶ 28 (assistant city income tax administrator was paid a fee for services, did not receive fringe benefits, provided many of his own supplies, and received form 1099 for tax purposes); *State ex rel. Peyton v. Schumacher*, 10th Dist. No. 00AP-78, 2000 WL 1715901, *2 (person who hauled gravel for two townships did not maintain regular hours, did not receive fringe benefits, was paid by the amount hauled and not an hourly wage or salary, and provided his own truck for hauling).

**{¶ 41}** The instructors rely on evidence of a resolution setting forth duties for VLA instructors and performance evaluations completed for Nese, Williams, and Miles, all of which were drafted *after* the STRS decided that the instructors were independent contractors and not employees entitled to retirement-system membership. The instructors' argument is not persuasive, given that the STRS was not presented with this information prior to rendering its decisions. The STRS could not have abused its discretion based on evidence that was never presented to it. *See Marchiano*, 121 Ohio St.3d 139, 2009-Ohio-307, 902 N.E.2d 953, ¶ 25 (applying this general rule to a determination by the School Employees Retirement System). Notably, even the general duties for VLA instructors listed

in the resolution are directed to the basic rules of the work to be performed (e.g., logging onto the system daily to grade students' work and answering students' questions) rather than to subjective decisions about the quality or substance of the work itself (e.g., directing the actual grading and answers provided by the instructors).

{¶ 42} Finally, the instructors rely on a statement in a retirement-system employers' manual that "[i]f the teaching duties performed by an independent contractor are the same as those performed by teachers under employment contracts, then there is no difference for [retirement-system] purposes." But even assuming purely arguendo that we are bound to accept that statement as true, the instructors submitted no credible evidence, much less clear and convincing evidence, to establish that their duties were the same as those performed by other teachers working with Jefferson County ESC under employment contracts.

{¶ 43} On the record before us, we cannot say that the STRS's determination was arbitrary, unreasonable, or unconscionable. At worst, the evidence was equivocal. Reasonable minds could differ as to whether Nese, Williams, and Miles were independent contractors or employees of Jefferson County ESC when they acted as VLA instructors. But our role is not to review de novo. Rather, our duty under the law of Ohio is to review only for an abuse of discretion.

{¶ 44} In discharging that duty, we affirm the decision of the court of appeals because the instructors have failed to present clear and convincing evidence establishing that they were employees. The court of appeals properly held that the STRS's decision was supported by some evidence and that, therefore, mandamus would not lie.

{¶ 45} Finally, we recognize that the dissent in the court of appeals expressed concern over STRS's

imposing the traditional attributes of a teacher on the less than traditional and, in light of technological advances, a likely increasingly common approach to teaching. What constitutes control will vary with the circumstances, and the circumstances here are considerably different than those of the more traditional classroom and make the factors [the STRS] cites not pertinent to determining whether relators are employees.

2011-Ohio-6764, ¶ 16 (Bryant, J., concurring in part and dissenting in part). We do not disagree with the view that the VLA and cyber schools present a new way of teaching. But it is precisely for those reasons that the STRS, with its expertise in this area, is entitled to deference. And, of course, the General Assembly is entitled to change the definition of "teacher" in R.C. 3307.01(B)(5) to encompass VLA instructors and other independent contractors who work in cyber schools. Those prerogatives, however, are not judicial ones.

### CONCLUSION

{¶ 46} We conclude that Nese, Williams, and Miles did not establish by clear and convincing evidence that the STRS abused its discretion by determining that they were not "teachers" under R.C. 3307.01(B) for purposes of their work as instructors for the VLA operated by Jefferson County ESC. We therefore affirm the judgment of the court of appeals.

Judgment affirmed.

LANZINGER, KENNEDY, and RINGLAND, JJ., concur.

PFEIFER, O'DONNELL, and O'NEILL, JJ., dissent.

ROBERT P. RINGLAND, J., of the Twelfth Appellate District, sitting for FRENCH, J.

_____

16

**O'DONNELL, J., dissenting.**

{¶ 47} Respectfully, I dissent.

{¶ 48} The issue in this case is whether relators John Nese, Donald Williams, and Catherine Miles are teachers entitled to participate in the State Teachers Retirement System ("STRS") in connection with their employment at the Jefferson County Educational Service Center providing teaching services through the virtual learning academy ("VLA"). In my view, they are teachers because they meet the statutory definition of teachers, and the appellate court magistrate determined that the STRS had abused its discretion in concluding that the relators were independent contractors. In addition, the appellate court magistrate found that the Jefferson County Educational Service Center employed Nese, Williams, and Miles to provide teaching services through the VLA.

{¶ 49} Nese, Williams, and Miles each held a license to teach from the state of Ohio, each instructed students not only in public schools but also through the VLA of the Jefferson County Educational Service Center, an agency supported by the state, and each contributed to STRS for their years of service. STRS objected to the legal conclusions of the magistrate. On its review, the appellate court approved and adopted the magistrate's findings, but then disregarded them by concluding that Nese, Williams, and Miles were independent contractors.

{¶ 50} Because Nese, Williams, and Miles qualify statutorily as teachers, because the magistrate's findings are supported by the record, and because the appellate court abused its discretion by adopting the findings of the magistrate but then denying the writ, I would reverse the decision of the appellate court and grant the writ.

### Factual Background and Procedural History

{¶ 51} Nese, Williams, and Miles taught school in Jefferson County, and they also taught courses through the VLA of the Jefferson County Educational

Service Center, an Internet-based educational system designed for K-12. According to the magistrate's decision, Nese provided teaching services through the VLA from the 2005-2006 fiscal year through the 2007-2008 fiscal year, Williams and Miles provided services in the program from the 2004-2005 fiscal year through the 2007-2008 fiscal year, and contributions were submitted to STRS by relators and the Jefferson County Educational Service Center for that service. However, in a December 2008 letter, STRS refunded $14,771.93 in contributions, asserting that earnings for the VLA were being returned as unauthorized contributions.

{¶ 52} In December 2009, Nese, Williams, and Miles filed a mandamus complaint in the Tenth District Court of Appeals seeking to compel STRS to accept their contributions for earnings from the Jefferson County Educational Service Center. The appellate court referred the matter to a magistrate, who found that the Jefferson County Educational Service Center employed Nese, Williams, and Miles to provide teaching services through the VLA, further found that relators had received W-2 and 1099 forms from the Jefferson County Educational Service Center, and concluded that relators' receipt of these "does not indicate independent contractor status." The magistrate also noted that the Jefferson County Educational Service Center exercises control over relators and concluded that their status was that of employees, not independent contractors. The magistrate also referred to an STRS employer fact sheet, which suggested that even hiring independent contractors does not necessarily relieve the employer of the obligation to forward contributions on earnings. The magistrate thus concluded that Nese, Williams, and Miles fit within the statutory definition of teacher and recommended that the writ be allowed to permit them to participate in STRS.

{¶ 53} The appellate court, after reviewing the magistrate's recommendation and adopting its findings, rejected the magistrate's legal

conclusions and instead concluded that STRS did not abuse its discretion in concluding that relators are independent contractors.

{¶ 54} Relators and the Jefferson County Educational Service Center appealed that denial to this court.

## Standard of Review

{¶ 55} This court applies a standard of abuse of discretion when reviewing an appellate court decision on a complaint seeking a writ of mandamus. *State ex rel. Hillyer v. Tuscarawas Cty. Bd. of Commrs.*, 70 Ohio St.3d 94, 97, 637 N.E.2d 311 (1994) (applying abuse-of-discretion standard to appellate court's decision in a mandamus case). "The term 'abuse of discretion' means an unreasonable, arbitrary, or unconscionable decision." *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 14.

## Relators are Teachers

{¶ 56} R.C. 3307.01(B)(5) defines the term "teacher" to include "[a]ny other teacher or faculty member employed in any * * * other agency wholly controlled and managed, and supported in whole or in part, by the state or any political subdivision thereof." Because the Jefferson County Educational Service Center is a successor to a county school district, it receives funding from the state. R.C. 3311.05(A); R.C. 3301.07(C). In *Cline v. Martin*, 94 Ohio St. 420, 426, 115 N.E. 37 (1916), we characterized boards of education of county school districts as "agencies of the state for the organization, administration, and control of the public school system of the state, separate and apart from * * * other subdivisions of the state." Thus, in conformity with this statute, educational service centers are agencies supported in whole or in part by the state. *See generally* R.C. 3317.11.

{¶ 57} In addition, R.C. 3307.01(B)(5) emphasizes the *capacity* in which employment occurs, in order to distinguish those employed as teachers from those employed in other capacities, such as cooks or custodians or administrators, etc.

This statute therefore defines teachers as those employed in the capacity of teachers or faculty members employed in an agency supported by the state. Here, each relator is a member of the teaching profession, has a license to teach issued by the state of Ohio, and provided teaching services through the VLA by virtue of employment at the Jefferson County Educational Service Center, an agency that is supported by the state.

{¶ 58} Notably, the General Assembly does not use the term "employee" in R.C. 3307.01(B)(5), nor does it require employment status as it has done in other statutes relating to retirement systems. *Compare* R.C. 145.01(A)(3) ("public employee" means "[a]ny person who is an *employee* of a public employer, notwithstanding that the person's compensation for that employment is derived from funds of a person or entity other than the employer") (emphasis added); R.C. 5505.02 (membership in the Ohio State Highway Patrol Retirement System "includes all state highway patrol *employees*, as defined in [R.C. 5505.01], and such membership is mandatory for such *employees*") (emphasis added). Although the General Assembly could have required a teacher to be an employee in the definition of "teacher" in R.C. 3307.01(B)(5), it did not do so.

{¶ 59} Thus, in my view, relators were employed as teachers in the Jefferson County Educational Service Center within the meaning of R.C. 3307.01(B)(5).

### Employee vs. Independent Contractor

{¶ 60} STRS urges that R.C. 3307.01 permits only those *employed* as teachers to participate in the retirement system, claiming that some evidence supports its determination that Nese, Williams, and Miles were independent contractors, not employees, and ineligible to participate in STRS.

{¶ 61} Contrary to this position, the magistrate found that the Jefferson County Educational Service Center employed them as teachers, and that finding is supported by competent, credible evidence: W-2 forms issued to relators for at

least some of their years of service and the control of the mode and manner of instruction by the Educational Service Center. Notably, in *Gillum v. Indus. Comm.*, 141 Ohio St. 373, 48 N.E.2d 234 (1943), we explained that an individual is an employee, rather than an independent contractor, when the employer has the right to control the manner in which the individual works. *Id.* at paragraph two of the syllabus.

{¶ 62} And the magistrate also noted that an STRS employer fact sheet instructs that STRS may still require contributions from those hired as independent contractors:

Hiring an individual to fill an STRS Ohio-covered position through an independent contract or a temporary agency does not necessarily relieve an employer's obligation to make contributions on earnings to STRS Ohio. *If the individual's duties are the same as those performed by teachers or administrators under employment contracts, STRS Ohio considers the individual to be an employee and requires contributions to be remitted to STRS Ohio.*

Please note that an agreement to be an independent contractor is not the sole indicator of a true independent contract relationship. Primary criterion cited in Attorney General Opinions and IRS Guidelines for distinguishing between an independent contractor and an employee is the right of the employer to control the "mode and manner" of the work performed.

(Emphasis added.)

{¶ 63} The magistrate's recommendation concluded as follows: "Given the record, the fact that relators fit within the definition of R.C. 3307.01(B)(4),

and STRS policy regarding independent contractors, the evidence fails to support [State Teachers Retirement Board's] finding that relators are not members of STRS for the employment with [Jefferson County Educational Service Center] and teaching at the VLA." 2011-Ohio-6764, ¶ 51.

{¶ 64} The difficulty for me with the court of appeals' opinion is that it adopted the factual findings of the magistrate, ¶ 13, but then disregarded those findings in its analysis when it concluded that the STRS did not abuse its discretion in concluding that the relators were independent contractors. The appellate court's conclusions contradict the findings it adopted, and because relators did prove their entitlement to participate in STRS for at least some of their years of service, the court of appeals abused its discretion in denying the writ.

**Conclusion**

{¶ 65} Nese, Williams, and Miles satisfy the definition of teacher set forth in R.C. 3307.01(B)(5). The Jefferson County Educational Service Center, an agency supported by the state, employed them as teachers, they served in that capacity for several years, they made STRS contributions during that time, and they relied on their status as teachers for their retirement. The sudden and unexpected refund of those contributions by STRS on its assertion that contributions for earnings from the VLA are unauthorized is wholly unwarranted.

{¶ 66} Accordingly, I would conclude that the court of appeals abused its discretion in adopting the findings of its magistrate but then concluding, contrary to those findings, that STRS did not abuse its discretion in returning what it called "unauthorized" contributions. I would therefore reverse the judgment of the court of appeals and grant the requested writ.

PFEIFER and O'NEILL, JJ., concur in the foregoing opinion.

_____

Green, Haines, Sgambati Co., L.P.A., Ira J. Mirkin, Stanley J. Okusewsky III, and Charles W. Oldfield, for appellants John Nese, Donald Williams, and Catherine Miles.

Pepple & Waggoner, Ltd., R. Brent Minney, and Mark J. Jackson, for appellant Jefferson County Educational Service Center Governing Board.

Michael DeWine, Attorney General, and Allan K. Showalter and John E. Patterson, Assistant Attorneys General, for appellee.

_____