[Cite as *Boyland v. Giant Eagle*, 2017-Ohio-7335.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Judith Boyland, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 17AP-133 |
| | | (C.P.C. No. 15CVC-1629) |
| Giant Eagle et al., | : | |
| | | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on August 24, 2017

**On Brief:** *Swope and Swope*, and *Richard F. Swope*, for appellant. **Argued:** *Richard F. Swope*.

**On Brief:** *The Center @ 600 Vine*, and *Molly G. Vance*, for appellees Giant Eagle and Prestige Delivery Systems.

**On Brief:** *Emmanuel Olawale*, for appellee Emmanuel Enofe.

APPEAL from the Franklin County Court of Common Pleas

TYACK, P.J.

{¶ 1} Plaintiff-appellant, Judith Boyland, appeals the Franklin County Court of Common Pleas' decision granting defendants-appellees', Prestige Delivery Systems, Inc. and Giant Eagle, motion for summary judgment. For the following reasons, we reverse and remand the decision of the trial court.

## I. FACTS, CASE HISTORY AND JURISDICTION

{¶ 2} Boyland alleges that on July 30, 2013 while at a Giant Eagle grocery store, she was struck in the back and knocked down by defendant, Emmanuel Enofe. Enofe was pushing a Giant Eagle shopping cart filled with boxes that he was delivering to the store.

As a result of the incident, Boyland claims back and neck pain and seeks damages for past and future medical expenses and non-economic damages.

{¶ 3}   Boyland avers that Enofe was an employee of defendants-appellees, Prestige Delivery Systems, Inc. (hereinafter "Prestige") and Giant Eagle.   Boyland states in the complaint that Enofe, acting in the course and scope of his employment, was negligent. (Compl. at ¶ 4.)   The complaint alleges that Prestige and Giant Eagle were aware of Enofe overloading his cart and obstructing his own vision such that his collision with Boyland occurred.   Prestige and Giant Eagle filed a motion for summary judgment arguing that Enofe was an independent contractor and they were not liable and that Boyland failed to allege that Enofe's negligence could be imputed to Giant Eagle.

{¶ 4}   On August 18, 2016, the trial court granted Prestige's and Giant Eagles' motion for summary judgment.   The trial court found that Boyland made no allegations that liability should be imputed to Giant Eagle on the basis that Giant Eagle was the owner of the subject property and therefore these arguments should fail as a matter of law. The trial court also found that Boyland made no argument of liability under apparent agency or agency by estoppel.

{¶ 5}   The trial court concluded that there is no evidence in the record that Giant Eagle or Prestige controlled or retained the right to control the mode and manner of Enofe's work.   The trial court found that Boyland failed to establish any genuine issue of material fact that Enofe is an employee of Prestige or Giant Eagle.   Prestige's and Giant Eagles' motion for summary judgment was granted and all claims against them were dismissed.

{¶ 6}   On January 23, 2017, Boyland dismissed her complaint only as to Enofe, pursuant to Civ.R. 41(A)(1).   Boyland then filed a notice of appeal on February 20, 2017 from the August 18, 2016 decision granting summary judgment.

{¶ 7}   The August 18, 2016 interlocutory summary judgment order dismissing Giant Eagle and Prestige was converted into a final appealable order when Boyland dismissed defendant Enofe from the lawsuit pursuant to Civ.R. 41(A)(1).   "[A] Civ.R. 41 dismissal dismisses all claims against the defendant designated in the dismissal notice and does not apply to defendants named in the complaint who are not designated in the notice of dismissal." *Denham v. New Carlisle*, 86 Ohio St.3d 594, 597 (1999).   Because

voluntary dismissal pursuant to Civ.R. 41(A) renders the parties as if no suit had ever been filed against only the dismissed parties, a trial court's summary judgment decision meets the requirements of Civ.R. 54(B) and is a final appealable order. *Id.*, *see Pattison v. W.W. Grainger, Inc.*, 120 Ohio St.3d 142, 2008-Ohio-5276 (interpreting the change in language of Civ.R. 41 in response to the decision in *Denham*). The trial court's August 18, 2016 decision granting summary judgment was rendered a final appealable order under R.C. 2505.02 and Civ.R. 54(B), and properly appealed to this court.

## II. ASSIGNMENT OF ERROR AND STANDARD OF REVIEW

{¶ 8} Boyland brings one assignment of error for our consideration:

> THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO DEFENDANTS-APPELLEES, GIANT EAGLE AND PRESTIGE DELIVERY SYSTEMS, INC., AS TO PLAINTIFF-APPELLANT JUDITH BOYLAND.

{¶ 9} Civ.R. 56(C) states that summary judgment shall be rendered forthwith if:

> [T]he pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion.

{¶ 10} Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 629 (1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 65-66 (1978). "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Once the moving

party meets its initial burden, the non-moving party must then produce competent evidence showing that there is a genuine issue for trial. *Id.* at 293.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

Civ.R. 56(E). "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." *Hannah v. Dayton Power & Light Co.,* 82 Ohio St.3d 482, 485 (1998). Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the non-moving party. *Murphy v. Reynoldsburg,* 65 Ohio St.3d 356, 358-59 (1992).

{¶ 11} In the summary judgment context, a "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Turner v. Turner,* 67 Ohio St.3d 337, 340 (1993). When determining what is a "genuine issue," the court decides if the evidence presents a sufficient disagreement between the parties' positions. *Id.*

{¶ 12} De novo review is well-established as the standard of review for summary judgment. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 (1996). We stand in the shoes of the trial court and conduct an independent review of the record applying the same summary judgment standard. As such, we must affirm the trial court's judgment if any of the grounds raised by the moving party, at the trial court's level, are found to support it, even if the trial court failed to consider those grounds. *See Dresher*; *Coventry Twp. v. Ecker,* 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

## III. CIV.R. 8 AND NOTICE PLEADING

{¶ 13} The trial court found in its decision granting summary judgment that Boyland failed to make allegations in the complaint that liability should be imputed to Giant Eagle on the basis that Giant Eagle was the owner of the subject property and that these arguments should fail as a matter or law. The trial court also found that Boyland

made no such argument in the complaint of liability under apparent agency or agency by estoppel.

{¶ 14} Civ.R. 8 provides in pertinent part:

> **(A) Claims for relief.** A pleading that sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled.
>
> * * *
>
> **(E) Pleading to be concise and direct; consistency.**
>
> **(1)** Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.
>
> * * *
>
> **(F) Construction of pleadings.** All pleadings shall be so construed as to do substantial justice.

{¶ 15} We are mindful of the general rule that pleadings shall be construed so as to do substantial justice and to that end, shall be construed liberally in order that substantive merits of the action may be served. *MacDonald v. Bernard*, 1 Ohio St.3d 85 (1982).

{¶ 16} Ohio is a notice-pleading state. "Ohio law does not ordinarily require a plaintiff to plead operative facts with particularity." *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, ¶ 29. Notice pleading under Civ.R. 8(A)(1) and (E) requires that a claim concisely set forth only those operative facts sufficient to give "fair notice of the nature of the action." *Ford v. Brooks*, 10th Dist. No. 11AP-664, 2012-Ohio-943, ¶ 13. (Internal quotations omitted.) "Nevertheless, to constitute fair notice, the complaint must allege sufficient underlying facts that relate to and support the alleged claim; the complaint may not simply state legal conclusions." *Montgomery v. Ohio State Univ.*, 10th Dist. No. 11AP-1024, 2012-Ohio-5489, ¶ 20.

{¶ 17} Boyland's complaint alleged the following relevant operative facts:

> 2.) Plaintiff asserts Defendant Giant Eagle permitted and directed an employee of Defendant Prestige Delivery

Systems, to move product into their store, controlling where the merchandise should be placed.

3.) Plaintiff asserts that while the employee of Defendant Prestige Delivery Systems, Defendant Emmanuel Enofe, was acting in the course and scope of his employment for Defendants, he negligently pushed a cart loaded with merchandise into Plaintiff's back, throwing her to the floor.

4.) Plaintiff asserts Defendant Giant Eagle, Defendant Prestige Delivery Systems, and their employee, Defendant Emmanuel Enofe, acting in the course and scope of his employment with Defendants, were negligent in training, supervising, and permitting the employee, Defendant Emmanuel Enofe, to be overloaded, delivering merchandise in a crowded store and operating his cart into the back of Plaintiff, causing injuries to her back, neck, and body, resulting in medical, prescription, and other expenses.

(Compl. at ¶ 2-4.)

{¶ 18} Giant Eagle was aware of the underlying facts from the allegations of the complaint. The complaint provided fair notice that the action would proceed, at least in part, under the theory that a business owes a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers. Giant Eagle and Prestige were also put on notice of operative facts in which there could be liability under apparent agency.

{¶ 19} The trial court narrowly read the complaint. Because Boyland continuously stated that Enofe was an employee, the trial court apparently felt that employee status was the only operative fact necessary to determine in the case. The complaint alleges operative facts distinct from Enofe being an employee and a liberal re-reading of the complaint is appropriate. The complaint stated that:

[1.] Giant Eagle permitted and directed Enofe to move product into their store, controlling where the merchandise should be placed.

[2.] Enofe negligently pushed a cart loaded with merchandise into Boyland's back throwing her to the floor.

[3.] Giant Eagle, Prestige Delivery, and Enofe were negligent in training, supervising, or permitting Enofe to be

> overloaded, delivering merchandise in a crowded store and operating his cart into the back of Boyland, causing injuries to her back, neck, and body, resulting in medical, prescription, and other expenses.

{¶ 20} Liberally construing the complaint, as we are required to do, we find that operative facts were alleged to support a claim of negligence through apparent agency and a claim of negligence through the duty Giant Eagle owes to its business invitees. *MacDonald*; *see Thatcher v. Lauffer Ravines, LLC*, 10th Dist. No. 11AP-851, 2012-Ohio-6193, ¶ 44 (A complaint pleading common-law negligence in a premises liability action could also go forward on a Landlord-Tenant Act claim if the allegations in the complaint provided fair notice to the defendants that the action could proceed on this theory). Therefore, we consider these claims that the trial court found failed as a matter of law for failure to be pled.

## IV. NEGLIGENCE

{¶ 21} It is well-settled that in order to establish a cause of action for negligence, the plaintiff must show by a preponderance of evidence that "(1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting therefrom." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 8. "The existence of a duty depends on the foreseeability of the injury, and the test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *McGuire v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 96API04-444 (Sept. 30, 1996), citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984).

## V. EMPLOYEE OR INDEPENDENT CONTRACTOR

{¶ 22} Boyland argues that Enofe is an employee of Giant Eagle and Prestige and both Giant Eagle and Prestige are liable for his negligence based on their control of Enofe. Giant Eagle and Prestige argue that Enofe is an independent contractor.

{¶ 23} "Generally, an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of respondeat superior, but not for the negligence of an independent contractor over whom it retained no right to control the mode and manner of doing the contracted-for work." *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435, 438 (1994). "The chief test in determining whether one is an

employee or an independent contractor is the right to control the manner or means of performing the work." *Bobik v. Indus. Comm.*, 146 Ohio St. 187 (1946), paragraph one of the syllabus. As a practical matter, every contract for work reserves to the employer a certain degree of control to enable him to ensure that the contract is performed according to specifications. *State ex rel. Nese v. State Teachers Ret. Bd. of Ohio*, 136 Ohio St.3d 103, 2013-Ohio-1777, ¶ 34. Control over manner and means of the work performed exists on a continuum on which an employee and an independent contractor are separated:

> The control of the work reserved in the employer which effects a master-servant relationship is control of the means and manner of performance of the work, as well as of the result; an independent contractor relationship exists where the person doing the work is subject to the will of the employer only as to the result, but not as to the means or manner of accomplishment. Thus, a person employed to perform certain work is not necessarily a mere servant because the contract provides that the work shall be subject to the approval or satisfaction of the employer. Such a provision is not an assumption by the employer of the right to control the person employed as to the details or method of doing the work, but is only a provision that the employer may see that the contract is carried out according to the plans.

*Gillum v. Indus. Com.*, 141 Ohio St. 373, 383 (1943), quoting 1 Restatement of Agency, Section 2 (1933).

{¶ 24} In determining who has the right to control the work, we must examine the individual facts of the case:

> The factors to be considered include, but are certainly not limited to, such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes travelled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts.

*Bostic v. Connor*, 37 Ohio St.3d 144, 146 (1987).

{¶ 25} "Although the determination of whether a person is an agent is usually a question of fact for a jury" a court can determine the question as a matter of law if the

relevant facts are not in dispute. *Damon's Missouri Inc. v. Davis*, 63 Ohio St.3d 605, 612 (1992).

{¶ 26} Based on the evidence, pursuant to Civ.R. 56(C), we examine all the relevant facts as to whether Enofe is an employee of Prestige or Giant Eagle. Enofe had a working relationship with Prestige since December 2010. (Mot. for Sum. Jgmt. at Ex. A.) Enofe had a contract with Prestige that he believed made him an independent contractor. (Enofe dep., at 19; Orlando Hill dep. at 8.) Enofe was not told by Prestige to carry insurance other than car insurance. (Enofe dep. at 5-6.) Enofe was required by his contract with Prestige to carry car insurance, which he apparently had at the time of the incident. (Hill dep. at 16.) The contract with Enofe contains an indemnification clause. (Hill dep. at 19.)

{¶ 27} It is not clear whether Enofe received a 1099 or W-2 tax form from Prestige:

> Q. All right. You did not receive any type of a W-2, correct?
>
> A. Yeah. I receive it, every year.
>
> Q. You receive a 1099?
>
> A. Every year.
>
> Q. Okay. A 1099?
>
> A. Yeah.

(Enofe dep. at 20.) Enofe believes that there was money removed from his weekly pay check that covered some sort of insurance, other than car insurance, but after the incident at Giant Eagle he was told that this insurance was not used within the work premises:

> Q. Did they ever request you to get any other type of insurance apart from your auto coverage?
>
> A. Yeah. There was a second time, you know, I thought about -- they just -- they sent a paper around that day. From today, we need to give you some insurance because according to our paycheck, every week they take about, $33 a week from our paycheck, that $33, plus for the office, paperwork and everything, that's what they use -- that is my mind. After that, the same, at about that same time, they came, they say we put -- maybe, like, $10 off or $10 a week from your paycheck. They said this one is going to be for insurance.

> This is insurance. This is for your insurance because of an eventuality. But when this incident happened, I talked to my boss about my insurance, they told me that insurance is not -- is not insurance that you use within the work premises in case you have any problem, that's all they told me.
>
> Q. And did you ever get a copy of that declaration page for that insurance that they take money from?
>
> A. No, they did not give us nothing.
>
> Q. Did you ever get a copy of any policy?
>
> A. No.

(Enofe dep. at 24-25.) It is clear that Enofe is unsure of what insurance his paycheck is being deducted for. Further he uses language that would be more typical of an employee when talking about his "boss" and "paycheck."

{¶ 28} Enofe goes to the Prestige warehouse everyday as many other people go to their office. "[O]ur warehouse is our office, it's our everything, that's where we go, everybody go there every day." (Enofe dep. at 27.) It is clear that Enofe receives all of his deliveries from the Prestige warehouse. Prestige brings a large delivery to its warehouse location where "the independent contractor shows up to that location, goes to the area where his particular area may be in that facility, verifies he has everything and proceeds to make deliveries." (Hill dep. at 9.)

{¶ 29} Enofe said that Prestige gave instructions as how to do his job and to deliver stuff in the way that they asked:

> Q. Okay. Did Prestige Delivery in any way give you instruction as to how to do your job?
>
> A. Yeah.
>
> Q. And what instruction did they give you?
>
> A. When the employee -- they told us they give us stuff to deliver, you have to deliver it in the way we ask you do it, but if you go to a store, let them sign for whatever you deliver. We have a plan on how to print out everything at the time we deliver the stuff and send it to the warehouse.

(Enofe dep. at 20.) Prestige goes into more detail in describing Enofe's work:

A. He would have shown up to an area in the warehouse where his freight would have been staged. He would have gotten everything for that particular area and proceeded to make deliveries.

Q. I want to know how he gets the information where to go, that's what I'm --

A. The routes are staged in the same place every day.

Q. So you put paperwork in a place where he goes to check to see if he got any deliveries?

A Typically, an individual that provides the service, he does freight every day, may not be the same customer, may not be the same address.

* * *

A. His freight would be at a location inside the Columbus warehouse.

Q. Okay. And do you take that document from Giant Eagle and somebody take that document to the warehouse and stick it into his box?

A. It could have even been uploaded into scanners. The independent contractors rent scanners also.

(Hill dep. at 21-22.) Prestige's representative further describes the operation:

A. Our operation is somewhat like UPS, where the same individual covers the same group of zip codes, sort of speak.

Q. And how was the guy paid? Was he paid per volume or per trip or what?

A. It -- it varies depending on what customer he services.

* * *

Q. Is it based on time or amount of product?

A. No, it could -- it's probably based on the delivery and the number of pieces. So the delivery address, and maybe up to a certain amount of pieces.

(Hill dep. at 29-30.)

{¶ 30} Some of the deliveries for Prestige did not have a time frame. (Enofe dep. at 20.) It seems that Enofe can refuse to do a delivery if he is sick and cannot do the job that day:

> Q. Did you say that you have the option of saying, no, I'm not going to make that delivery or no, I'm not going to do it today?
>
> A. When they give your route, the option you have is if you are not okay or if you are sick, you can say, I'm sorry. I'm sick. I can't do this job today.
>
> Q. Okay. And then --
>
> A. And if I'm sick, not today because somebody have to do it.

(Enofe dep. at 30, 32.) Enofe was required to provide his own equipment and vehicle in making deliveries. (Enofe dep. at 21.) Prestige did not provide any delivery equipment to physically remove the deliveries like a dolly or a cart. Enofe determined the route he was to take to make deliveries. (Enofe dep. at 22.)

{¶ 31} Enofe was previously asked to make the delivery to customer service at the front of the Giant Eagle store. (Enofe dep. at 7.) It is not clear whether Giant Eagle or Prestige directed where Enofe was to place the signs he was delivering. Enofe delivered the signs with a Giant Eagle shopping cart. (Enofe dep. at 7.) The testimony is unclear what directions Prestige would give in making a delivery other than having someone sign for the delivery. (Enofe dep. at 21.) Prestige's representative, Hill, states that Giant Eagle gives directions on where to pick up the products that are to be delivered. (Hill dep. at 6-7.) Prestige claims that the information on where in the store to deliver the items are passed on from Giant Eagle to Enofe. (Hill dep. at 13.) Giant Eagle corporate would tell the delivery man what to pick up and where to deliver the weekly advertisement signs. (Glenda Taylor dep. at 6.)

{¶ 32} As to the central question of who controls what Enofe is doing, or who tells him what to do, the answer from the deposition is not clear. Nor is there a clear description of the general process in which Enofe works that would clearly delineate him as an independent contractor. Further on the crucial question of who told Enofe to make

the delivery to Giant Eagle's customer service station at the front of the store seems to indicate that Prestige gave that instruction but that certainly is not the only conclusion from a plain reading of the deposition. (Enofe dep. at 31-32.) The depositions of Taylor and Marcus Rogan certainly indicate that Giant Eagle directed where the sign deliveries were to be placed.

{¶ 33} The impression from reading the deposition of Enofe is that Enofe did not fully understand all of the questions being presented to him. A simple reading of the transcript allows for multiple interpretations of the answers that were given. It is clear that at certain points, there was a failure to communicate and not every mis-communication was properly clarified.

{¶ 34} Taking the totality of the depositions and exhibits in the record and viewing the evidence most strongly in favor of Boyland, reasonable minds cannot come to but one conclusion, that Enofe was an independent contractor. The material fact of whether Enofe was an employee of Prestige or an independent contractor remains to be litigated.

## VI. APPARENT AGENCY

{¶ 35} Boyland has also sought to establish apparent agency of Enofe with a principal of either Giant Eagle or Prestige. "In order to establish apparent agency, the evidence must show that the principal held the agent out to the public as possessing sufficient authority to act on his behalf and that the person dealing with the agent knew these facts, and acting in good faith had reason to believe that the agent possessed the necessary authority." *Ohio State Bar Assn. v. Martin*, 118 Ohio St.3d 119, 2008-Ohio-1809, ¶ 41.

{¶ 36} As stated, we find that operative facts were alleged to support a claim of negligence through apparent agency. The evidence does not support a motion for summary judgment. Reasonable minds can come to more than one conclusion on whether Enofe was held out as the apparent agent of either Giant Eagle or Prestige. Appellees have failed to meet the burden of their initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of Boyland's claim. *Dresher* at 292. Summary judgment is not appropriate as to a claim of negligence through apparent agency.

## VII. NONDELEGABLE DUTY OF ORDINARY CARE TO BUSINESS INVITEES

{¶ 37} Boyland also has claimed that Giant Eagle is liable as it owes a duty to business invitees to warn of dangerous conditions known to the proprietor.

{¶ 38} An employer is generally not liable for the negligent acts of independent contractors. There are exceptions to this general rule, several of which stem from the nondelegable duty doctrine. "Nondelegable duties arise in various situations that generally fall into two categories: (1) affirmative duties that are imposed on the employer by statute, contract, franchise, charter, or common law and (2) duties imposed on the employer that arise out of the work itself because its performance creates dangers to others, *i.e.*, inherently dangerous work." *Pusey v. Bator*, 94 Ohio St.3d 275, 279 (2002). "If the work to be performed fits into one of these two categories, the employer may delegate the work to an independent contractor, but he cannot delegate the *duty*." (Emphasis sic.) *Id.*

{¶ 39} The employer is not insulated from liability if the independent contractor's actions result in a breach of the duty. *Ford Motor Credit Co. v. Ryan*, 189 Ohio App.3d 560, 2010-Ohio-4601 (10th Dist.).

{¶ 40} A business ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers so that its customers are not unnecessarily and unreasonably exposed to danger. *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 5; *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203 (1985). "This includes the duty to warn patrons of dangerous conditions known to, or reasonably ascertainable by, a proprietor which a patron should not be expected to discover or protect himself against." *Jackson v. Kings Island*, 58 Ohio St.2d 357, 359 (1979). "It is only where it is shown that the owner had superior knowledge of the particular danger which caused the injury that liability attaches." *LaCourse v. Fleitz*, 28 Ohio St.3d 209, 210 (1986). "Constructive notice cannot be proved without a factual basis that the hazard existed for a sufficient time to enable the exercise of ordinary care." *Worley v. Cleveland Pub. Power*, 77 Ohio App.3d 51, 54 (8th Dist.1991).

{¶ 41} We now examine the evidence most strongly in favor of Boyland in the record to see if Enofe's weekly delivery of the advertisement signs represented a danger that Giant Eagle knew of or it was reasonably ascertainable to determine.

{¶ 42} The delivery itself represented a danger as Enofe could not see where he was going and could not see Giant Eagle customers in front of him. Enofe was delivering cardboard boxes loaded with signs. (Enofe dep. at 7.) The boxes in the cart were taller than the cart itself. (Enofe dep. at 8.) The store was busy at the time. (Enofe dep. at 14.)

{¶ 43} The boxes were normally larger than what would fit in a shopping cart that Enofe would get from the Giant Eagle. (Taylor dep. at 8.) Enofe was delivering three or four boxes about five feet tall each at the same time, none of which fit in the grocery cart he was using. (Enofe dep. at 16.) The cart was filled with either three or four boxes with dimensions about three feet wide and four feet tall that contained the display items. (Taylor dep. at 16.)

{¶ 44} The deliveries to the front of the store had been occurring weekly for a long time. Display items were being delivered to Giant Eagle. (Hill dep. at 8.) Deliveries are made to this Giant Eagle on a regular basis. (Hill dep. at 19.) Giant Eagle indicates that Enofe had always delivered the boxes in the same way:

> Q. Okay. And he had them stacked in a normal ordinary grocery cart, right?
>
> A. Correct
>
> Q. Is that the way he always delivered them?
>
> A. Yes, that I have seen, that's the way they always bring them in.
>
> Q. Did you ever note when that obscured his vision?
>
> A. Honestly, I don't know that I've seen them bring them in that often. They just come in at night, drop them off, and then leave. They don't need a signature or anything.

(Taylor dep. at 16-17.)

{¶ 45} Giant Eagle clearly knew about these regular deliveries and had directed Enofe to make these deliveries in the front of the store amongst the patrons. There is no

evidence that they took reasonable precautions to address that danger. The delivery man would place the advertising box in the same place in the front of the store to the back of the service deck in front of the cash office. (Taylor dep. at 7, 15.) The boxes are normally large which could not fit in the cart that Enofe would get from the Giant Eagle. (Taylor dep. at 8.) Giant Eagle manager Taylor was unaware of any Giant Eagle employee asking Enofe to move the cart in such a way that he could see where he was going. (Taylor dep. at 17.)

{¶ 46} Giant Eagle had many employees in the front of the store that regularly saw the deliveries being made. There are "call coordinators" that monitor the area of the accident. (Taylor dep. at 7.) Giant Eagle had a Columbus police officer working special duty when the accident happened. (Taylor dep. at 9.) Marcus Rogan the manager on duty the day of the incident indicated that if an employee saw Enofe delivering merchandise in such a manner that he could not see where he was going they would tell him to stop. (Rogan dep., at 11.) Glenda Taylor who acts as a manager for Giant Eagle said that if an employee, whether working the checkout lanes or not, saw a carrier pushing a cart with signs piled so high they could not see where they were going it would be their responsibility to inform management. (Taylor dep. at 14.)

{¶ 47} Viewing the evidence most favorably to Boyland, we find that the weekly delivery of the advertisement signs represented a danger that Giant Eagle was well aware of and did nothing to mitigate or take reasonable precautions against and that Giant Eagle had a duty to warn patrons of this dangerous condition.

{¶ 48} Summary judgment is not appropriate. Viewing the evidence most strongly in favor of Boyland, we find that there are genuine issues of material fact that remain to be litigated.

{¶ 49} The sole assignment of error is sustained.

## VIII. CONCLUSION

{¶ 50} Appellees could find themselves in a conflict of interest situation. Enofe could be found by a factfinder to be an employee and Giant Eagle could be found liable for allowing a dangerous situation to continue to take place on their property. It is apparent that Giant Eagle and Prestige shared the belief that Enofe should be found to be an independent contractor and that would shield them both completely from liability. This

assumption at this stage of the proceeding is in error. Liability could attach other ways and Enofe might be found to be an employee. These two parties might wish to detangle themselves as litigation proceeds.

{¶ 51} The decision of the Franklin County Court of Common Pleas is reversed and the case is remanded for further proceedings.

*Judgment reversed and case remanded*
*for further proceedings.*

BRUNNER and HORTON, JJ., concur.

———————————