[Cite as *State ex rel. Showman v. State Teachers Retirement Sys. of Ohio*, 2017-Ohio-2768.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Rebecca Showman, | : | |
| Relator, | : | |
| v. | : | No. 16AP-202 |
| State Teachers Retirement System of Ohio, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

D E C I S I O N

Rendered on May 11, 2017

**On brief:** *The Bainbridge Firm,* and *Carol L. Herdman,* for relator.

**On brief:** *Michael DeWine, Attorney General, John J. Danish,* and *Mary Therese J. Bridge*, for respondent.

IN MANDAMUS

LUPER SCHUSTER, J.

{¶ 1} Relator Rebecca Showman has filed an original action requesting this court issue a writ of mandamus ordering respondent State Teachers Retirement System of Ohio to vacate its February 18, 2016 decision denying relator's application for disability benefits and to grant the application.

{¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, recommending this court deny relator's request for a writ of mandamus. No objections have been filed to that decision.

{¶ 3}   Finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law.   In accordance with the magistrate's decision, we deny relator's requested writ of mandamus.

*Writ of mandamus denied.*

KLATT and BRUNNER, JJ., concur.

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Rebecca Showman, | : | |
| Relator, | : | |
| v. | : | No.  16AP-202 |
| State Teachers Retirement System of Ohio, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on January 31, 2017

*The Bainbridge Firm,* and *Carol L. Herdman,* for relator.

*Michael DeWine,* Attorney General, *John J. Danish,* and *Mary Therese J. Bridge,* for respondent.

IN MANDAMUS

**{¶ 4}**  In this original action, relator, Rebecca Showman, requests a writ of mandamus ordering respondent, State Teachers Retirement System of Ohio ("STRS"), to vacate its February 18, 2016 decision that denies relator's application for a disability benefit, and to enter a decision that grants the application.

Findings of Fact:

**{¶ 5}**  1. On September 3, 2014, relator completed an application for a disability benefit on a form provided by STRS.  On the form, relator indicated that she is employed by the North Fork Local School District as a fifth grade teacher.

**{¶ 6}**  Section 4 of the form asks the applicant to list specific diagnoses or conditions that are the cause of disability and that will incapacitate the applicant for the performance of the applicant's most recent STRS position for at least 12 months from

the date the application is received.  In response, relator listed three conditions:  (1) clinical depression, (2) panic disorder/anxiety, and (3) social phobia.

{¶ 7}   Section 5 of the form asks the applicant to identify the attending physician. Relator identified Dr. Donald DeShetler.

{¶ 8}   2. On August 31, 2014, Dr. DeShetler completed an STRS form captioned "Attending Physician's Report."  Dr. DeShetler indicated that he specializes in "Family Practice."

{¶ 9}   The form asks the attending physician to certify whether the applicant is incapacitated for the performance of duty and whether disability is considered permanent.  In the space provided, Dr. DeShetler wrote that disability "may be" considered permanent.

{¶ 10}  3.  By letter dated September 10, 2014, STRS informed relator:

> We received an *Attending Physician's Report* from Dr. Donald DeShetler, recommending that you do not meet STRS Ohio's definition of disability. Therefore, your application for benefits cannot be processed.
>
> * * *
>
> In order to continue processing your current disability application, we will need an *Attending Physician's Report,* completed by a psychiatrist (M.D. or D.O.) within 30 days of this letter.

{¶ 11}  4. On October 6, 2014, psychiatrist Sahaja Reddy, M.D., completed an STRS attending physicians report.  In response to the forms query, Dr. Reddy certified that relator is incapacitated for the performance of duty and that the disability is expected to last 12 or more months.  Dr. Reddy's report was received by STRS on October 8, 2014.

{¶ 12} Attached to Dr. Reddy's report is a three-page September 15, 2014 report of certified nurse practitioner ("CNP") Laura Davis regarding relator's treatment at Dublin Springs.  CNP Davis' report states:

> The patient had first presented to the Intensive Outpatient Program for Mental Health on September 10, 2014, with symptoms of high anxiety and panic with agoraphobia as well as major depressive disorder symptoms. She was evaluated by myself on September 10th and I had

recommended to her at the time to be reassessed for the Partial Hospitalization Program. She reports today that she was reluctant to do so, but her husband had told her to follow whatever guidelines the staff here had set out for her, and so she did present for reassessment to the Partial Hospitalization Program. The patient reports that she has been depressed and anxious for many years. However, her anxiety has turned to panic in the last couple years due to changes instituted at her job as an elementary school teacher. She is very unhappy about new state testing requirements and the reports she has to prepared [sic] as well as the evaluation criteria she is submitted to. This apparently has caused her a great deal of distress and makes her feel as though it is impossible for her to work. * * * On her admission to the Intensive Outpatient Program, I took a great deal of time with her to explain that she needed more medication. She had been seeing her primary care physician who had prescribed her 0.5 mg of Klonopin 2 times daily and nothing else. * * * She did agree to be prescribed Remeron and initially I had wanted to start her on 15 mg. Her note from the Intensive Outpatient Program states 15 mg. However, at the last minute, the patient had changed her mind and wanted to try only 7.5 mg. She reports her sleep was great the first night as it had been very disordered prior to taking the Remeron, but she now reports she is back to frequent awakenings about 6 times a night, though she is able to go back to sleep fairly quickly. She reports no suicidal ideation today and last experienced suicidal ideation on Friday after seeing me for assessment for the Intensive Outpatient Program. She reports the impetus for her suicidal ideation is worrying about the financial burden she is placing on her husband if she is to go through with the disability. The patient seems a good deal calmer today but reports her anxiety is still at an 8/10, which is down from 10/10 last Friday. She reports her depression is a 7/10.

* * *

MENTAL STATUS EXAMINATION

Mood is depressed and anxious. The patient is not tearful today as she had been last Friday. Thought content is without suicidal ideation, but last experienced on September 10th. She denies any history of homicidal ideation or psychotic symptoms. Thought processes remain hopeless, helpless, and infused with anxiety. The patient is also perseverated [sic] on whether or not to leave her job as a

teacher. Recent and remote memory are impaired with increase in her mood symptoms. Attention and concentration are likewise impaired with an increase in her mood symptoms. Associations are intact. General fund of knowledge is average to above average. Judgment is fair at best. Insight is rather poor.

DIAGNOSES:
AXIS I:
1. Major depressive disorder, recurrent, severe, without psychotic features.
2. Generalized anxiety disorder.
3. Panic disorder with agoraphobia.

AXIS II: Deferred.
AXIS III:
1. Hypertension.
2. Premature ventricular contractions with anxiety and stress.
AXIS IV: Severe occupational stress.
AXIS V: Global Assessment of Functioning is 39.

* * *

TREATMENT AND DISCHARGE PLAN NEEDS
The patient is admitted to Dublin Springs Hospital Partial Hospitalization Program where she will take part in all group activities and therapy at the direction of the mental health group therapist. The patient's Remeron will be increased to 15 mg daily and possibly 30 mg daily if her symptoms do not improve. I will consider the addition of an antidepressant if her anxiety abates further and she is still experiencing high depressive symptoms or a return of her suicidal ideation.

{¶ 13} 5. By letter dated October 14, 2014, Earl N. Metz, M.D., the chair of the Medical Review Board ("MRB"), informed relator:

Acting on behalf of the Medical Review Board, I have advised a period of psychiatric treatment for [six] months prior to the determination of disability. This is based on the current information in the medical records which indicate disability for psychiatric reasons. I have determined that medical treatment offers a reasonable expectation of correction or rehabilitation of the disabling condition to the extent that the applicant could be expected to be capable of performing teaching duties within a reasonable time, but not to exceed

six months as allowed in Section 3307.62 of the Ohio Revised Code.

{¶ 14} 6. By letter dated October 14, 2014, STRS informed relator:

After reviewing your attending physician reports, the Medical Review Board determined that you must secure psychiatric treatment for six months before further consideration of your application for disability benefits. The Retirement System cannot assume financial responsibility for such treatment. Following six months of treatment, you should request your doctor to furnish this office with a report regarding the treatment provided and progress you have made.

* * *

Please inform us of the name and address of the psychiatrist you will be seeing for treatment.

After receiving your doctor's report, we will arrange for examination. * * *

The Ohio Administrative Code 3307:1-7-04 reserves the right to request this delay as a prerequisite toward determination of permanent disability. Failure to promptly obtain the treatment suggested above will seriously jeopardize any further consideration of your application.

{¶ 15} 7. On December 16, 2014, treating psychiatrist Erin R. Roylance, D.O., who is employed by Behavioral Healthcare Partners of Central Ohio, Inc., wrote:

Her diagnoses are:

294.9 Cognitive Disorder NOS
296.32 Major Depressive Disorder, Recurrent, Moderate
300.02 Generalized Anxiety Disorder
300.21 Panic Disorder With Agoraphobia

She is on the following medications:

Klonopin (clonazepam) (0.5 mg tablet) Take 1 tablet by mouth three times a day

Remeron (mirtazapine) (15 mg tablet) Take 1 tablet by mouth at bedtime

Her ability to return to work is primarily limited by cognitive problems. She has had trouble with concentration and memory. She has difficulty remembering instructions on how to take medications, she has difficulty remembering what I have said about follow-up appointments. I told her repeatedly that she needed to see a therapist in addition to seeing me, but she called back at least twice because she was confused about that. In addition, she continues to report moderate depression and anxiety.

She is taking a benzodiazepine which can worsen memory. I reduced her dose of Klonopin from 1 mg BID to 0.5 mg TID today. I plan to further reduce Klonopin on a monthly basis until she is off. My plan is to get her off of Klonopin and then consider neuropsych testing if warranted at that time.

I suspect that she has an underlying cognitive disorder that caused her to lose her ability to function as a teacher. As she became more aware of her difficulty, I believe that her anxiety and depression worsened her cognitive function. Most adults are able to function well even on high doses of Klonopin. Currently, I believe that she is completely unable to return to work. I am not confident that she will be able to return to teaching full time.

{¶ 16} 8.  By letter dated December 24, 2014, STRS informed relator:

You have completed the requested delay for treatment. State Teachers Retirement System will continue to process your disability application. * * *

Your application included Attending Physician's Reports from Laura Davis, N.P. and Deshetler and Reddy. Examinations for determining eligibility for disability benefits will be assigned by the Medical Review Board only for conditions specified by you on your application and reported as permanently disabling by your physician(s). Your application and attending physician(s) provided support for the following conditions, depression and anxiety, to be processed.

{¶ 17} 9. On January 5, 2015, at the request of STRS, relator was examined by psychiatrist Marjorie C. Gallagher, M.D.  In her ten-page narrative report, received by STRS on January 13, 2015, Dr. Gallagher states:

**MENTAL STATUS EXAMINATION:** Ms. Showman is a casually and neatly dressed, middle-aged woman, who

appeared younger than her stated age. She was superficially cooperative. Even though she denied that she was irritable or angry, she was irritated and defensive at times about the questions she was being asked. Her mood was mildly anxious. She teared a few times. She indicated that she was starting to have a panic attack that only lasted a few seconds. It did not prevent her from talking. There was no evidence of any incapacitating anxiety or depression.

Ms. Showman was oriented times three. Her memory, recent, remote, and immediate, was intact. There was no evidence of any concentration difficulties. She performed superiorly on testing for cognitive impairment or dementia. She was able to remember three out of three items after five minutes and fifteen minutes in a different order, which is more difficult to do. She spelled WORLD backwards. She was able to repeat five digits forwards and four backwards which is within normal limits. She performed serial sevens quickly and correctly. She was able to list five out of five rivers in addition to the St. Lawrence Seaway and five out of the last five presidents with their first names. She was able to name Ford and Nixon as additional presidents. She did well with similarities and differences and abstractly interpreted two proverbs.

Ms. Showman's thought processes were logical. She denied current auditory or visual hallucinations or homicidal ideation. She reports that she was hearing voices while on citalopram and sertraline. Ms. Showman reports that she first had suicidal ideation in 1989. She initially reported that she is not currently suicidal. She then claimed that she currently has fleeting suicidal thoughts, but not to the extent that she had in 2/14 and 3/14. She later claimed that she is praying that she does not act on the suicidal ideation. She then claimed that she has suicidal ideation with intent and then prays. She does not call anyone about the suicidal ideation. She then explained that she has the thought only for short periods if there is any stress or if there is a tiff between her mother and son because she cannot handle it. Ms. Showman denies that she has ever made a suicide attempt. No delusions were elicited. Reality assessment appeared good. Impulse control appeared adequate.

**DIAGNOSTIC IMPRESSION:**

**Major Depressive Disorder, Recurrent, In Partial Remission**

**Generalized Anxiety Disorder**
**Panic Disorder Without Agoraphobia**
**Personality Disorder, NOS**
**Hypertension**
**Osteoarthritis, Degenerative Knee Joint Disease**
**S/P Left Total Knee Arthroscopy**

**DISCUSSION:** Ms. Showman reports that she has had anxiety with panic attacks the last three or four years. She had a major depressive episode in early 2014. She had had two previous episodes of depression that had responded to Paxil, a SSRI. Ms. Showman reports symptoms that suggest hypomania. Ms. Showman had had an improvement in her symptoms in late spring and throughout the summer so she returned to teaching in 8/14. Ms. Showman has only been in psychiatric treatment since 9/2014. According to Ms. Showman, she was doing worse after the partial hospitalization program and IOP at Dublin Springs.

Ms. Showman has been stressed by the paperwork requirements in her job in the last few years. She lacks confidence, seeing herself as inadequate. She had had this symptom in 2005 that had improved with counseling. In addition, Ms. Showman's elderly mother became ill in 4/14 and has required more care that Ms. Showman has been providing since that time. Ms. Showman reports that she was being told by two principals and fellow teachers that she was doing an excellent job.

Ms. Showman has been in treatment with a psychiatrist since 10/14 and has had an improvement in her symptoms. She not [sic] longer meets the diagnostic criteria for Major Depression Disorder. She has had anxiety and panic attacks for years. Her psychiatrist is appropriately tapering her off Klonopin. Ms. Showman is motivated to be a writer and is currently working toward that goal. She has multiple activities that she enjoys. It would be expected that Ms. Showman would have further improvement in her psychiatric symptoms over the next 9 or 10 months with continued treatment.

Ms. Showman has an extensive list of activities. Any psychiatric symptoms she currently has are not severe enough to interfere with her ability to function. Given the improvement in Ms. Showman' s psychiatric symptoms with treatment and medication, her list of activities, superior performance on cognitive testing, and her mental status

during the clinical psychiatric evaluation, it is my opinion that Ms. Showman is not permanently or presumed to be permanently disabled based on psychiatric evaluation.

**RECOMMENDATION:** Ms. Showman is not permanently or presumed to be permanently disabled based on psychiatric evaluation. Continued psychiatric treatment is recommended.

{¶ 18} 10. On an STRS form captioned "Recommendation of Medical Examiner," Dr. Gallagher indicated by her mark that relator "IS NOT considered to be disabled from his or her most recent job duties for 12 or more continuous months after the date of application." (Emphasis sic.) Dr. Gallagher further indicated that "reasonable recovery" can be anticipated within three to six months.

{¶ 19} 11. Pursuant to Ohio Adm.Code 3307:1-7-01(I) three physicians were chosen to be the MRB panel in relator's case. The MRB physicians are: (1) psychiatrist Stephen F. Pariser, M.D., (2) psychiatrist Jeffrey C. Hutzler, M.D., and (3) Barry Friedman, M.D.

{¶ 20} 12. On January 19, 2015, Dr. Pariser wrote to Dr. Metz:

According to Ms. Showman's application, she has struggled with Depression and Panic Attacks for the past several years. She did not respond well to several antidepressants prescribed by her family physician, Dr. Donald DeShetler. Ms. Showman reported that her anxiety, panic and depression have made it difficult for her to carry out her teaching responsibilities.

* * *

I concur with Dr. Gallagher's professional option [sic] that this member is not currently disabled and that her condition is not work prohibitive. I also suggest that Ms. Showman's psychiatrist, as noted by Dr. Gallagher, investigate concerns about possible bipolar disorder.

{¶ 21} 13. On January 20, 2015, Dr. Hutzler wrote to Dr. Metz:

After her examination Dr. Gallagher recommended that Ms. Showman was not considered to be disabled from her most recent job duties for 12 or more continuous months after the date of application, anticipating reasonable recovery in 3 to 6 months.

> **After reviewing these documents it is my recommendation that Rebecca Ruth Showman is not considered to be disabled from her most recent job duties for 12 or more continuous months after the date of application.**

(Emphasis sic.)

{¶ 22} 14.  On January 29, 2015, Dr. Friedman wrote to Dr. Metz:

> Based on Ms. Showman's extensive activities it was Dr. Gallagher's opinion that her psychiatric symptoms at this time were not severe enough to interfere with her ability to function." [sic] She found no evidence of a cognitive disorder. It was Dr. Gallagher's opinion that Ms. Showman is not disabled on a psychiatric basis.
>
> Following my review of the available records and Dr. Gallagher's evaluation I concur with her opinion that Ms. Showman is not permanently disabled on a psychiatric basis with the recommendation that her application for a disability benefit be denied.

{¶ 23} 15.  On February 3, 2015, Dr. Metz wrote to the STRS board:

> The disability application of the above named member and the findings of the appointed examiner have been studied by the following Medical Review Board members, Dr. Stephen Pariser, Dr. Jeffrey Hutzler, and Dr. Barry Friedman. The Medical Review Board concurs with the opinion of the appointed examiner and recommends that disability benefits be denied.

{¶ 24} 16.  By letter dated February 20, 2015, relator was informed:

> This letter is to notify you that the STRS Ohio Retirement Board took official action at its meeting on February 19, 2015, to deny your application for disability benefits.
>
> * * * You have the right to appeal the Retirement Board action under Section 3307.62 of the Revised Code and Rule 3307:1-7-05 of the Administrative Code, provided written notice of appeal is received by STRS Ohio within 15 calendar days from your receipt of this letter. The request must be accompanied by a statement from you, your counsel or attending physician that an appeal will be based on

additional medical evidence contrary to the findings of the Medical Review Board.

{¶ 25} 17. By letter dated March 2, 2015, relator's counsel initiated an administrative appeal of the February 19, 2015 decision of the STRS retirement board.

{¶ 26} 18. In support of her administrative appeal, relator submitted additional evidence. Also, relator's counsel submitted a four-page brief in support.

{¶ 27} 19. Under letter dated May 19, 2015, Dr. Metz submitted additional material to Dr. Gallagher for her review. Dr. Metz's letter states:

> You examined the above member for STRS Ohio on January 5, 2015. Enclosed for your information is additional material. Please review the new information and let us have your comments.
>
> If the information is compelling enough to warrant a change in your initial evaluation, another certification form is enclosed. If a reexamination is needed, please let us know. If the enclosed material does not add substantially to the case, please advise in writing and your original decision will stand.

{¶ 28} 20. On May 29, 2015, Dr. Gallagher issued a second report in response to Dr. Metz's May 19, 2015 letter. In her two-page narrative report, Dr. Gallagher states:

> A letter from Ms. Showman dated 2/22/2015 was reviewed. As indicated in the mental status, Ms. Showman was defensive and irritated at times about providing information especially about her social functioning and activities. She had not revealed that she was in the process of receiving TMS treatment at Riverside. She had not revealed that she has had issues at home with her husband periodically abusing alcohol. She reported that she had never been abused. She did have intermittent anxiety as she verbalized once that she was starting to have a panic attack. She continued to talk in spite of being told that she could take a break and continued with the remainder of the evaluation without problems. I did not discount, "chuckle," make fun of, detract, or say "I do not understand why family docs prescribe Klonopin right away." I do understand why they do, as do psychiatrists at times. The truth is that Ms. Showman herself had indicated that her family physician should not have prescribed Klonopin as she explained that her present psychiatrist is in the process of tapering her off Klonopin.

A letter from Mr. Randy Nielsen, Utica elementary principal, dated 5/12/2105 [sic] was reviewed. A letter from Mr. Scott Harley, superintendent, dated 5/12/2015 was reviewed. A letter from psychiatrist Erin Roylance, D.O. dated 5/7/2015 was reviewed. A letter from Mary Brett, LISW-S dated 5/1/2015 was reviewed. Medical records from Dr. Roylance dated 10/14/14 to 04/12/15 were reviewed. A letter from Douglas Lunsford dated 5/121/5 [sic] was reviewed.

Ms. Showman has been in psychiatric treatment since 10/14/14 and has had an improvement in her psychiatric symptoms as indicated by Dr. Roylance's progress notes. In a progress note on 4/2/2015, Dr. Roylance indicates that Ms. Showman is "more calm today than I have ever seen her." Ms. Showman was noted to have moderate depression, fair judgment and fair attention and concentration. Otherwise, no other symptoms of depression were noted. From the history Ms. Showman provided during the psychiatric evaluation, she is not depressed most of the day nearly every day and does not have anhedonia. Thus she did not meet the diagnostic criteria for Major Depressive Disorder. Psychiatrist Dr. Roylance is appropriately tapering Ms. Showman off Klonopin, which in the short run may increase symptoms from withdrawal. High dose Klonopin and the process of tapering off Klonopin may affect cognition. Dr. Roylance notes in his progress note of 3/11/2015 that Klonopin may be making Ms. Showman worse. From Dr. Roylance's progress note dated 2/10/2015, Ms. Showman run [sic] out of Klonopin and had been off Klonopin for 10 days. She was taking Ativan that she had had [sic] from an unknown source in the interim. There was no evidence of any cognitive impairment during the psychiatric evaluation. Ms. Showman wrote a six page detailed letter that she would not have been able to do if she had significant cognitive impairment. In addition, as noted in the discussion, Ms. Showman has an extensive list of activities.

After review of the additional information, there is no objective information provided that would change my original opinion that Ms. Showman is not permanently or presumed to be permanently disabled. It is my opinion that Ms. Showman's psychiatric symptoms would be expected to continue to improve over the next 3 months especially after being tapered off high dose Klonopin.

{¶ 29} 21. On June 11, 2015, Dr. Metz authored an internal memorandum, stating:

> On February 19, 2015, the STRS Board voted to deny disability benefits.
>
> That decision was followed by receipt of extensive testimony from the member, her school principal, and the superintendent. Psychiatric testimony came from Dr. Roylance and included outpatient notes. In that material was reference to treatment of Ms. Showman at the Riverside Methodist Hospital using transcranial magnetic stimulation and the opinion of the treating physician that the member "bordered on psychosis." I can't find any direct reference to that treatment in the member's file.
>
> All of the new material noted above was forwarded to Dr. Gallagher for her comments. She responded in a letter to the MRB dated May 29, 2015. In that letter I believe that Dr. Gallagher answers effectively the rebuttal arguments. The recommendation of the MRB to deny disability benefits remains the same.

{¶ 30} 22. On June 17, 2015, an appeal hearing was held before the Disability Review Panel. Relator personally appeared with her counsel. Also, relator's principal, Randy Nielsen appeared.

{¶ 31} 23. On June 18, 2015, the STRS retirement board entered a decision to affirm its prior decision of February 19, 2015.

{¶ 32} 24. On August 23, 2015, relator filed a mandamus action in this court which was assigned case number 15AP-800.

{¶ 33} 25. On November 19, 2015, relator filed in this court a Civ.R. 41(A) notice of dismissal.

{¶ 34} 26. Apparently, relator's notice of dismissal was prompted by a settlement agreement effective November 20, 2015 between relator and STRS. The settlement agreement provides in part:

> STRS will reopen the appeal of Showman's disability benefits denial to the STRS Board for its consideration. That reopening will consist of providing all of the materials provided to STRS by Showman's counsel in correspondence dated May 12, 2015, to the examining physician Marjorie Gallagher, M.D. for review. Dr. Gallagher will have the

option of offering comments to affirm her initial evaluation, to change her initial evaluation, or to recommend reevaluation. The Chair of the Medical Review Board will review the materials submitted by counsel and any information or opinion offered by Dr. Gallagher and make a recommendation to the STRS Board. The STRS Board will then reopen the record of Showman's appeal hearing to accept the information and make a determination regarding the appeal of the denial of disability benefits. The Board's decision will be based upon the materials submitted by counsel, the information or opinion offered by Dr. Gallagher, the recommendation of the Medical Review Board, and the entirety of the record already before the Board. Showman and her counsel will be notified of the Board's decision.

{¶ 35} 27. Pursuant to the settlement agreement, all of the medical evidence was submitted to Dr. Gallagher for review.

{¶ 36} 28. On December 18, 2015, Dr. Gallagher issued a two-page narrative report addressed to Dr. Metz. This third report from Dr. Gallagher states:

Records from Mary Brett, LISW-S, dated 11/14/14/ to 3/27/15, were reviewed. Ms. Brett indicates in a progress note on 3/27/15 that Ms. Showman had fractured her hip after a fall. She further indicates that Ms. Showman continues to be depressed, but has improved. Ms. Showman did not have suicidal ideation. Ms. Brett indicates that Ms. Showman is struggling with self worth.

Medical records for Dublin Springs from 09/10/14 to 10/10/14 were reviewed. Ms. Showman had been admitted to the Intensive Outpatient Program where she was diagnosed with Major Depressive Disorder, Recurrent, Severe, without Psychotic Features, Generalized Anxiety Disorder, and Panic Disorder with Agoraphobia. It is noted on 10/3/14 that Ms. Showman's depression was improving and that she was less anxious.

Medical records from Donald DeShelter from 2/19/14 to 3/12/15 were reviewed. Dr. DeShelter indicates that Ms. Showman had started having depression on 8/12/14 and panic symptoms on 2/19/14. He notes on 10/6/14 that Ms. Showman is anxious with a normal mood and affect. He did not comment on any psychiatric issues in his note dated 3/12/15.

Medical records from Dr. Megan Schabbing dated 7/31/14 to 2/23/15 were reviewed. In a progress note dated 2/4/15, Dr. Schabbing indicates that Ms. Showman had had [sic] an improvement in motivation and energy, but had had [sic] minimal improvement in her severe recurrent major depression with transcranial magnetic stimulation (TMS) treatments. She indicates that Ms. Showman has a low mood, hopelessness, passive death wishes, anxious and tearful affect, and catastrophic thinking. Dr. Schabbing indicates that Ms. Showman's nihilistic thinking borders on psychosis. She recommended ECT. Dr. Schabbing also indicated in a letter dated 2/23/15, that Ms. Showman had completed a 36 treatment course of TMS and continued to have "severe catastrophic and nihilistic thinking bordering on psychosis" impairing her ability to function. Dr. Schabbing is not specific about what the thinking is or what possible psychotic symptoms Ms. Showman had reported. No one else has elicited any psychotic thinking. There is no diagnosis of any psychotic thinking in the medical records, including Dr. Schabbing's diagnosis of Major Depressive Disorder, Recurrent, Severe, 296.33 with no indication of psychosis.

All of the additional medical information reviewed predated the medical information that had been reviewed on 5/29/15, that included Dr. Roylance's medical progress note dated 4/2/15. There is no mention of cognitive impairment in the records or of psychosis.

After review of the additional information submitted on appeal, there is no objective information provided that would change my original opinion regarding Ms. Showman's disability determination. It remains my opinion that Ms. Showman is not permanently or presumed to be permanently disabled.

{¶ 37} 29. On January 6, 2016, Dr. Metz issued an internal memorandum to the STRS retirement board. The memorandum states:

At the June 2015 appeal, STRS Ohio received approximately 65 pages of supportive appeal information on behalf of Ms. Showman's application for disability benefits. The information had been reviewed by Dr. Gallagher and members of the STRS Medical Review Board (MRB). An additional 260+ pages of material was also submitted. This information was reviewed by the Chair of the MRB and deemed not to include new or compelling, medical

information or information not available elsewhere in the record. Therefore, it was not reviewed by Dr. Gallagher or other members of the MRB. Dr. Gallagher was subsequently provided access to this information and reported her interpretation * * *. I have also reviewed all of this material again.

{¶ 38} 30. On February 18, 2016, the STRS Disability Review Panel met to reopen the matter to consider the additional documents.

{¶ 39} 31. On February 18, 2016, based on the conclusions of the Disability Review Panel, the STRS retirement board voted to affirm its prior decision and to deny relator's application for disability benefits.

{¶ 40} 32. On March 18, 2016, relator, Rebecca Showman, filed this mandamus action.

Conclusions of Law:

{¶ 41} The main issue is whether the reports of Dr. Gallagher provided the STRS retirement board with some evidence to support its denial of relator's application for disability benefits.

{¶ 42} Finding that the reports of Dr. Gallagher provided the STRS retirement board with some evidence to support its denial of the disability application, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 43} Ohio Adm.Code 3307:1-7-01 currently provides:

(G) "Independent medical examiner" shall mean a competent physician neither involved in a treatment relationship with an applicant or recipient nor otherwise employed by the retirement system, who shall be designated by the chair of the medical review board to conduct an impartial examination.

* * *

(I) "Medical review board" shall mean the group of independent physicians designated by the retirement board under the direction of a chair appointed by the retirement board to assist in the evaluation of medical examinations and information. The members of the medical review board may be asked in panels of three or more to review any application

and provide their conclusions as to whether an applicant will be mentally or physically incapacitated from the performance of duty for at least twelve months.

(J) A disabling condition shall be "presumed to be permanent," if it physically or mentally incapacitates an applicant from the performance of regular duty for a period of at least twelve months from the date of the retirement system's receipt of the completed application.

{¶ 44} Mandamus is the appropriate remedy when no statutory right of appeal is available to correct an abuse of discretion by an administrative body such as the STRS retirement board. *State ex rel. Pipoly v. State Teachers Retirement Sys.,* 95 Ohio St.3d 327, 2002-Ohio-2219, ¶ 14.

{¶ 45} The STRS retirement board abuses its discretion—and a clear right to mandamus exists—if it enters an order that is not supported by some evidence. *State ex rel. Woodman v. Ohio Public Emps. Retirement Sys.,* 144 Ohio St.3d 367, 2015-Ohio-3807, citing *State ex rel. Nese v. State Teachers Retirement. Bd. of Ohio,* 136 Ohio St.3d 103, 2013-Ohio-1777, ¶ 26.

{¶ 46} STRS has no clear legal duty cognizable in mandamus to specify what evidence it relied on and to explain the reasoning for its retirement board's decision. *Pipoly* at ¶ 22.

{¶ 47} In determining whether to grant an application for disability benefits, the STRS retirement board is not required to give greater weight to the medical reports and opinions of the applicant's treating physicians. *Pipoly* at ¶ 23-25. See *State ex rel. Bell v. Indus. Comm.,* 72 Ohio St.3d 575 (1995) (The Industrial Commission is not required to give enhanced weight to the attending physician's report in determining whether to award permanent total disability compensation).

{¶ 48} Pursuant to Ohio Adm.Code 3307:1-7-01(G), Dr. Gallagher was chosen by the chair (Dr. Metz) of the MRB to serve as the independent medical examiner for relator's application.

{¶ 49} Pursuant to Ohio Adm.Code 3301:1-7-01(I), Drs. Pariser, Hutzler, and Friedman were chosen by Dr. Metz to serve as a panel of three from the MRB to assist in the evaluation of medical examinations and information.

{¶ 50} It can be noted that, as the independent medical examiner, Dr. Gallagher was required to actually examine relator. However, Drs. Pariser, Hutzler, and Friedman did not examine relator and were not authorized to do so.

{¶ 51} Dr. Gallagher issued three reports regarding relator's application. Following a January 5, 2015 examination, Dr. Gallagher issued her first report in which she opined that relator "is not permanently or presumed to be permanently disabled based on psychiatric evaluation."

{¶ 52} Following the February 19, 2015 denial of her application, relator administratively appealed the decision and submitted additional evidence in support of the appeal.

{¶ 53} Relator's appeal prompted Dr. Metz to ask Dr. Gallagher to review additional evidence submitted by relator and to issue a second report. On May 29, 2015, Dr. Gallagher issued her second report in which she indicated that the opinion rendered in her January 2015 report had not changed after reviewing the additional medical evidence.

{¶ 54} Following the June 18, 2015 decision of the STRS retirement board to affirm its prior decision and, thus, deny the application, relator filed in this court a mandamus action that was subsequently dismissed because the parties entered into a settlement agreement.

{¶ 55} Pursuant to the settlement agreement, all of the medical evidence submitted by relator in support of her appeal was submitted to Dr. Gallagher for yet another review. On December 18, 2015, Dr. Gallagher issued her third report in which she indicated that her disability opinion contained in her first report had not changed following her full review of all the medical evidence of record. There is no dispute here that Dr. Gallagher was presented all the medical evidence of record and that she reviewed that evidence.

{¶ 56} Here, relator alleges that Dr. Gallagher's first and second reports fail to provide the some evidence to support the final decision of the STRS retirement board because Dr. Gallagher did not have all the medical evidence of record before issuing the first and second report. Be that as it may, it is clear that Dr. Gallagher's reporting was

cured by submission of all medical evidence of record for another review and the issuance of the third report on December 18, 2015.

{¶ 57} Here, relator challenges the reports of Dr. Gallagher by asserting "there is simply no logical way to reconcile Dr. Gallagher's opinions that Relator does not suffer from major depressive disorder and is not permanently disabled with the numerous records of all of Relator's treating physicians." (Relator's Brief at 34.)

{¶ 58} Relator continues her argument: "Relator recognizes that Respondent can obtain medical opinions from independent physicians, but it is unreasonable, arbitrary, and unconscionable for respondent to rely upon a medical opinion that is so at odds with the documented medical findings." (Relator's Brief at 34-35.)

{¶ 59} Relator's challenge to the reports of Dr. Gallagher fails to recognize that the treating physicians do not determine whether relator is entitled to disability retirement benefits. Rather, that determination, pursuant to R.C. 3307.62 is vested solely in STRS. *Pipoly* at ¶ 24. Moreover, the reports of relator's treating physicians are not entitled to greater weight simply because they are the reports of the treating physicians. *Pipoly* at ¶ 23-25. *Bell.*

{¶ 60} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).